Cornelius MOONEY, Plaintiff,

v.

PRESTON TRUCKING CO., Inc., Defendant.

Civ. A. No. 205-61.

United States District Court
D. New Jersey.

March 22, 1963.

Thomas E. Durkin, Jr., by Gregory J. Castano, Newark, N. J., for plaintiff.

Waldor & Beckerman, Newark, N. J., by Jacob Blum, Baltimore, Md., for defendant.

SHAW, District Judge.

This action is brought by plaintiff against defendant pursuant to the provisions of 29 U.S.C.A. § 216(b) to recover overtime compensation as provided by 29 U.S.C.A. § 207(a), together with an additional equal amount as liquidated damages, plus counsel fee and costs.

Defendant denies that the statutory provisions above cited are applicable, contending that plaintiff was an employee within the exempt statutory classification of 29 U.S.C.A. § 213(a) (1) as defined by administrative regulations set forth in 29 C.F.R. § 541.1, also appearing in Title 29 of the United States Code Annotated, at page 550.

It was stipulated by the parties that the plaintiff was in the employ of defendant from February 5, 1959, to November 6, 1959; that during this period defendant was engaged in the transaction of business in interstate commerce; and that plaintiff performed work in excess of forty hours per week for which he received no additional compensation. The burden of proof was thereupon cast upon defendant to establish that plaintiff was within the class of employees exempt from the coverage of the Fair Labor Standards Act. Richter v. Barrett, 173 F.2d 320 (3rd Cir., 1949).

The exempt classification upon which defendant relies is defined as follows by administrative regulations, 29 C.F.R. § 541.1:

"The term 'employee employed in a bona fide executive * * * capacity' in section 13(a) (1) of the act shall mean any employee:

"(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

"(b) Who customarily and regularly directs the work of two or more other employees therein; and

"(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

"(d) Who customarily and regularly exercises discretionary powers; and

"(e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: *Provided*, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns

at least a 20-percent interest in the enterprise in which he is employed; and

"(f) Who is compensated for his services on a salary basis at a rate of not less than $80 per week (or $55 per week if employed in Puerto Rico or the Virgin Islands) exclusive of board, lodging, or other facilities: *Provided,* That an employee who is compensated on a salary basis at a rate of not less than $125 per week (exclusive of board, lodging, or other facilities), and whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all of the requirements of this section."

■ The title of radio dispatcher assigned to plaintiff's position, standing alone, has no significance in the determination of whether or not he was in the exempt status; the duties of his employment are the controlling factors. Cf. Mc-Comb v. New York & New Brunswick Auto Express Co., 95 F.Supp. 636 (D.C. N.J.1950); Mitchell v. Branch Motor Express Co., 168 F.Supp. 72 (E.D.Pa.1958).

■ The issue is one of fact, and the disposition thereof depends upon whether or not defendant has established by a fair preponderance of the credible evidence adduced at trial that the duties of plaintiff's employment were such as to bring him within the class of an "employee employed in a bona fide executive * * * capacity."

Edward A. Schaub, one of the executive employees of defendant, testified that he hired plaintiff at the time that defendant made a decision to place two-way radios in some of its delivery trucks. He stated, in substance, that delivery service was conducted by two divisions, one of which was known as "less than truck-load size" (referred to as the LTL Division) and the other known as "full truck load." The LTL Division trucks traveled over interstate routes, making deliveries at various points along the assigned routes. The "full truck load" division trucks deliver a full load to one particular destination. The LTL Division trucks were equipped with the two-way radios for communication with the dispatcher at the terminal. The "full truck load" division trucks were not.

According to this witness, plaintiff was employed as a radio dispatcher for the LTL Division because of his qualifications in the field of radio communication and in traffic and transportation, evidenced by a certificate which he held from Rutgers University.

He stated that, after plaintiff was hired and prior to the time he assumed the duties of his employment as a radio dispatcher, all of the LTL Division drivers attended a meeting at which plaintiff was introduced to them as "their boss." He further testified that, during the period of plaintiff's employment, the truck drivers under his direct supervision ranged from sixteen to twenty-four. In substance, the further testimony of this witness and the testimony of the other witnesses called by defendant was to the effect that: The LTL Division of the defendant company, operating out of its Jersey City Terminal, was a separate department for operational purposes; that plaintiff was in charge of the delivery service conducted by this department; that he had authority to direct and supervise the activities of the truck drivers through the radio communication system while they were making deliveries; that supervision of deliveries to be made from place to place by the truck drivers involved exercise of discretionary power; that the truck drivers were obliged to accept his instructions as orders and were bound to comply with them; that he had authority to initiate disciplinary action and to suspend or cause the discharge of truck drivers within the framework of the union contract and company policy; that he was authorized to handle griev-

ances with the shop steward and had authority to adjust grievances; that all of the truck drivers were union men and plaintiff was not a member of the union; that he could regulate and determine what deliveries were to be made, where they were to be made, and when they were to be made; that he could authorize overtime pay when, in his discretion, overtime work was necessary; that he had authority to arrange to hire extra drivers, when needed, by request to the union; that when there was a breakdown of a truck on the road, it would be his duty by radio communication to tell the driver what to do; and that, when meetings of executive employees were called, plaintiff was included in those required to attend for discussion of matters involving company policy.

Plaintiff testified, in substance, that his duties as a radio dispatcher involved little more than the punching of cards and the recording of communications which he handled as a dispatcher. It is suggested by his testimony that, whenever discretion was to be exercised, his instructions came from Mr. Schaub and from Mr. Selden, the latter being the dispatcher for the "full truck load" division. He denied that he had any authority to discharge or hire truck drivers or to exercise discretionary power with respect to any matters of consequence relating to their work or company status. He emphasized that he was not in charge of the movement of trucks, but only recorded what was communicated to him and that the movement of trucks was determined in advance and that he did not participate in these decisions. Referring to the meeting at which he was allegedly introduced to the truck drivers as their boss, he stated that that meeting was called only to acquaint the drivers with the radio system and that tests were made on the morning of the meeting to demonstrate to the drivers how the system operated. In describing the discretion which he exercised, he denied that he had any as to major decisions or even as to mediocre decisions and that such discretion as he

had would be with reference only to "minute matters." When asked if he had discharged a truck driver, Peter Komenti, he stated that he "could not recall doing it." Upon further question from the Court, he stated that he was certain that he did not discharge this driver; but on cross-examination, he became equivocal again, relying on an absence of recollection.

Donald P. Selden, who had been discharged by defendant, testified on behalf of plaintiff, corroborating in part the testimony of plaintiff. According to this witness, he was the chief dispatcher, and the major function of plaintiff, as a radio dispatcher, was to give drivers pickup cards and record the conversations had with them by radio. When this witness was questioned about the discharge of Mr. Komenti by the plaintiff, his answer was that Mr. Komenti had not been discharged by plaintiff to his knowledge. He admitted, however, that plaintiff could make decisions in emergencies and with respect to pickups and delays and also that he, Selden, as dispatcher of the "full load operations" had the same relationship with drivers in that division as plaintiff had as dispatcher in the LTL Division.

It was observed by the Court that there was hesitancy, equivocation, and lack of recollection on the part of plaintiff in his response to many questions relating to the precise authority which he had or exercised in the discharge of the duties of his employment. It was further observed by the Court that admissions drawn from the witness, Mr. Selden, corroborating the factual contentions of plaintiff, were reluctant. The testimony of neither of these witnesses induced in the mind of the Court an impression that complete credence could be given to it. On the other hand, the testimony of the witness Schaub seemed to be spontaneous and forthright and corroborated by credible testimony of the other witnesses called on behalf of defendant.

A question of fact was raised as to whether plaintiff, in the discharge of the

duties of employment, ever actually hired any truck drivers or discharged any one of them. Though there is evidence from which it may be inferred that he did, that fact, of itself, is not an essential element of proof. The test is whether he had the authority to do so when and if the occasion for the exercise of it arose. Richter v. Barrett, supra. Occasions upon which the authority was exercised are, of course, corroborative of the existence of it. The same is true with whether particular weight would be given to plaintiff's suggestions and recommendations, as and when made, relating to change of status of other employees.

Upon consideration of all of the evidence, it is the opinion of the Court that the credible evidence, together with the stipulations of fact, established:

1. That plaintiff was employed by defendant as a radio dispatcher from February 5, 1959, to November 6, 1959, in work associated with the transaction of business in interstate commerce by defendant;

2. That during part of the aforesaid period of employment, his salary was $110 per week and during the latter part, $115 per week, and that he worked in excess of forty hours per week for which he received no additional compensation;

3. That, as radio dispatcher, he was in charge of and managed the LTL Division of defendant's delivery service which was a customarily recognized department or subdivision of defendant's business;

4. That he customarily and regularly directed the work of two or more other employees therein, the number ranging from sixteen to twenty-four;

5. That he had authority to initiate disciplinary action against the truck drivers in the LTL Division; to suspend the employment of drivers or cause the discharge thereof; to authorize overtime pay; and to participate in the adjustment of employee grievances with the shop steward of the union; and that the suggestions and recommendations of plaintiff, within the framework of company policy, to his superiors with respect to the status of truck drivers in the LTL Division were given particular weight;

6. That while he was on duty as a radio dispatcher in the LTL Division, instructions and orders to truck drivers making deliveries were issued by him to them by radio communication;

7. That orders and instructions issued by plaintiff through the radio communication system were binding upon the truck drivers, and they were obliged, by virtue of company policy, to comply therewith;

8. That in the discharge of his duties as a radio dispatcher for the LTL Division, he customarily and regularly exercised discretionary power as to pickups, priority of deliveries, breakdowns and such other matters where instructions and further orders were necessary by reason of unforeseen circumstances arising during the course of deliveries by the truck drivers;

9. That he devoted less than 20% of his hours of work in the workweek to activities which were not directly or closely related to the foregoing enumerated functions.

The foregoing findings of fact bring plaintiff within the class of executive employees as defined by administrative regulations, 29 C.F.R. § 541.1. It might be added that it also seems to the Court, upon consideration of all of the credible evidence, that plaintiff would likewise

come within the exempt classification of 29 C.F.R. § 541.2.[1]

It is, therefore, established to the satisfaction of the Court that it has jurisdiction and that defendant has sustained the burden of proof by a fair preponderance of the credible evidence to establish that the duties of plaintiff's employment brought him within the class of employees exempt from the coverage of the Fair Labor Standards Act, 29 U.S.C.A. § 213(a) (1) and that judgment herein should be entered in favor of defendant and against plaintiff without costs.

An appropriate Order for entry of judgment will be submitted.

**Raleigh E. YATES, Libelant,**

**v.**

**VILLAIN AND FASSIO E., a body corporate, Respondent,**

**and**

**The Waterfront Company, a body corporate, Respondent Impleaded.**

**Admiralty No. 4246.**

United States District Court
D. Maryland.

April 5, 1963.

Albert Avnet, I. Duke Avnet and Lee Vogelstein, Baltimore, Md., proctors for libelant.

Ober, Williams, Grimes & Stinson and David Ross, Randall C. Coleman, Manfred W. Leckszas and Southgate L. Morison, Baltimore, Md., proctors for respondent.

Eugene A. Edgett, Jr., Baltimore, Md., proctor for respondent impleaded.

1. "541.2 *Administrative*

"The term 'employee employed in a bona fide * * * administrative * * * capacity' in section 13(a) (1) of the act shall mean any employee:

"(a) Whose primary duty consists of the performance of office or nonmanual field work directly related to management policies or general business operations of his employer or his employer's customers; and

"(b) Who customarily and regularly exercises discretion and independent judgment; and

"(c) (1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined in the regulations in this subpart), or

"(2) Who performs under only general supervision work along specialized or

# 574

NORTHROP, District Judge.

In this admiralty suit, Beatrice M. Yates, administratrix of the estate of Raleigh E. Yates, has filed a motion that she be substituted as party libelant.

The original libel, filed March 7, 1961, alleges that Raleigh E. Yates, on or about February 17, 1960, as a ship sealer aboard the vessel Carlin Fassio belonging to respondent whose full name is Villain and Fassio E Compagnia Internazionale Di Genova, Societa Riunite Di Navigazione, S. p. A., which vessel was then lying alongside a Baltimore pier, was injured due to unseaworthiness and negligence of that vessel.

On July 14, 1962, Raleigh E. Yates, libelant, died in the City of Baltimore, Maryland, from causes unrelated to the accident. On November 14, 1962, petitioner, his widow, was appointed administratrix of his estate.

The respondent shipowner opposes the motion to substitute on the ground that, under admiralty law (as under common law) a cause of action *in personam* abates upon the death of the plaintiff. Specifically, it is contended that by Chapter 399 of the 1957 Acts of the Maryland Legislature the statute providing for survival of a cause of action for personal injury was repealed. That chapter repealed Sections 29 and 30 of Article 75 of the Maryland Code of 1951. Section 29, in pertinent part, read:

"No action of ejectment, waste, partition, dower, replevin, or any personal action * * * in any court of law in this State shall abate by the death of either or any of the parties to such action; but upon the death of any defendant, the action shall be continued and the heir, administrator or executor of the defendant, or other person interested on the part of the defendant, may appear to such action * * *. This not to apply to actions for slander."

Section 30 was as follows:

"No action hereafter brought to recover damages for injuries to the person by negligence or default shall abate by reason of the death of the plaintiff, but the personal representatives of the deceased may be substituted as plaintiff and prosecute the suit to final judgment and satisfaction."

The fact that, prior to repeal, the Court of Appeals of Maryland had embodied the purport of these sections in Rule 220 of the Maryland Rules of Procedure [1]

---

technical lines requiring special training, experience or knowledge, or

"(3) Who executes under only general supervision special assignments and tasks; and

"(d) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and

"(e) Who is compensated for his services on a salary or fee basis at a rate of not less than $95 per week (or $70 per week if employed in Puerto Rico or the Virgin Islands) exclusive of board, lodging, or other facilities: *Provided*, That an employee who is compensated on a salary or fee basis at a rate of not less than $125 per week (exclusive of board, lodging, or other facilities), and whose primary duty consists of the performance of office or nonmanual field work directly related to management policies or general business operations of his employer or his employer's customers, which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all of the requirements of this section."