JOSÉ A. RODRÍGUEZ VELÁZQUEZ, Plaintiff and Appellant, *v.* CONCRETO MIXTO, INC., Defendant and Appellee.

No. R-67-331. Decided February 12, 1970.

---

*Roberto Armstrong, Jr.*, for appellant. *Goldman, Antonetti & Subirá* and *David F. Barreto* for appellee.

PER CURIAM: The question whether or not an employee is an executive of an employer during the greatest part of the period covered by the complaint is again raised.

We conclude that the trial court did not err in concluding that appellant was an executive during most of the time of said period and that therefore the claim for extra hours filed

by appellant concerning that part of the period of his employment does not lie. It erred in concluding thus with respect to the period comprised between September 10, 1959 and December 7, 1960 when appellant received pay on an hourly basis. The case should be remanded in order that evidence be introduced before the trial court about the availability of appellant's claim during said initial period of his employment with appellee.

The claim covers a term from September 10, 1959 to April 29, 1964. It alleges that appellee owes appellant the sum of $13,034 plus an equal amount on account of damages and fees, for hours worked in excess of (a) eight daily hours; (b) forty hours a week, and on account of having worked during the hour fixed for taking food.

The allegations of the complaint having been denied and the special defense that the complaint does not state a claim that justifies a remedy inasmuch as for the dates to which the complaint refers appellant was an executive manager and superior of the appellee company having been set up, the trial court dismissed the complaint on account that "appellant complied with each and every one of the requisites stated by the Federal Administrator in the 'Code of Federal Regulations', § 541.1, while he was employed by appellee and, hence, that while he was employed by appellee it was in a bona fide capacity as executive, being, therefore, included within the definition of employer of § 19 of Act No. 379, 29 L.P.R.A. § 288 and excluded from the definition of employee of the same." It made extensive findings of fact on which said ruling relied.

1.—Appellant assigns that the trial court erred in concluding that (a) "on the dates involved in the complaint an employee with bona fide executive capacity was considered as the one that . . . receives compensation for his services on the basis of a weekly salary of not less than $55 or $30 weekly if he is employed in P.R. . . ."; (b) appellant was an executive

during the periods in which he received weekly the sum of $50 for the hours worked during a week or during the period in which he was assistant to the Plant Keeper of appellee's plant No. 1. These are appellant's first three and fifth assignments. The period to which these assignments refer is the one comprised from September 10, 1959 to December 7, 1960, when appellant received payment on an hourly basis and therefore he did not comply with the requirements of an executive (29 C.F.R. § 541.1(f)). Appellee admits it thus. The hearing in this case having been limited to presenting evidence about the defense that appellant filled a position of executive during all the time in which he was employed by appellee, it is proper, as appellee indicates, to remand the case to the trial court for it to receive evidence about appellant's claim for the period of his employment with appellee comprised between September 10, 1959 to December 7, 1960.

2.—Assignments fourth and sixth seek to question the trial court's finding to the effect that since December 1960 appellant was an executive of appellee.

██ The regulations of the Federal Fair Labor Standards Act, 29 Code of Federal Regulations, § 541.1, which are the ones applicable to the case at bar, provide the requisites which an employee must fulfill in order that he may be considered as "employee employed in a bona fide executive capacity." We shall examine hereinafter the evidence alleged for the purpose of determining whether or not it supports the finding of the trial court that since December 1960, until he stopped working in April 1964, appellant exercised the duties of an executive and therefore he was not entitled to receive additional pay for working extra hours. The requisites in question are the following:

 (a) His primary duty consisted in the management of the enterprise where he was employed or of a customarily recognized department or subdivision thereof.

■ Section 541.102 of 29 C.F.R. specifies the usual duties and obligations of a particular position in order that the one who fills it may be classified as a bona fide executive. It is generally accepted that the following are functions in the executive category: interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property, and, in general, he should be the person who coordinates the smooth functioning of the division of the company which is under his supervision.

The uncontroverted evidence before the court establishes that among the fifteen to twenty companies which manufacture ready-mixed cement in Puerto Rico, defendant-appellee is among the first three; that the operation of these enterprises is on the basis of supervised plants under the orders of so-called Plant Managers; that plaintiff as Plant manager of plant number one directly supervised one or two weighers, a shoveler, and six or seven drivers. It was plaintiff-appellant who assigned the hours during which the orders of his plant could be delivered. In this respect plaintiff's own witness, Desiderio Rodríguez Rivera corroborates that it was plaintiff who fixed the hours for delivery. Plaintiff also determined the rhythm of delivery and was also the person who coordinated with defendant's clients everything in connection

with the service of the plant under his charge in problems such as deliveries and frequency of the same and complaints as to said services.

Likewise it was plaintiff who summoned personnel for next-day operations and advanced or delayed the entrance hours as necessary for production and therefore he authorized overtime work when necessary; he ordered materials as required by the operation; he assigned the necessary trucks for each project to which material from his plant was being served; he coordinated as manager of plant number 1 that there were sufficient trucks in each of defendant's plants; he authorized or rejected cash sales in accordance with the volume of business that was being performed; likewise, he fixed extra charges within certain limits when a delivery was delayed and plaintiff understood that this was chargeable to the client. In addition, plaintiff assigned the drivers in his plant different trucks and determined priorities in the delivery of orders. Plaintiff's own witness, Roberto Levy, testified that one of the discretional duties of plaintiff was the assignment of different trucks to each of the drivers assigned to his plant.

Plaintiff in his brief gives unusual importance to the fact that he was obliged to prepare certain delivery vouchers which served as orders for the drivers. However, the evidence establishes that plaintiff prepared from 35 to 40 delivery vouchers daily and that the preparation of each delivery voucher took between 25 to 30 seconds. As it will be seen by a simple mathematical operation, the period of time invested in this activity was minimal. There is no doubt that, as the trial court concluded, the preparation of these delivery vouchers was an activity directly and intimately connected with plaintiff's exempt work.

The foregoing having been considered we understand that the lower court did not err in concluding that plaintiff's primary duty during the period under consideration (Decem-

ber 7, 1960 to April 1964) was the management of a customarily recognized department or subdivision of defendant.

 (b) Who customarily and regularly directs the work of two or more other employees of the enterprise.

Plaintiff assigns in his brief that in the plant where he worked there were other plant managers with the same duties and responsibilities supervising the same persons. The evidence establishes that this situation occurred only before December 7, 1960. From December 7, 1960 on, plaintiff was the only plant manager at appellee's plant number 1.

Desiderio Rodríguez, witness for plaintiff, established that this supervision situation existed. He testified that plaintiff regulated the time to begin work and also determined the time to end work, which according to the witness, "may be at 4:00 p.m., 5:00 p.m., 6:00 p.m., 7:00 p.m. or until dawn." This witness also testified about the plaintiff's direct supervision and management over the shovelers, weighers, and drivers in the sense that it was plaintiff who told the drivers where they had to go, and that all the laborers in the plant were subject to the Plant Keeper. He also stated that if for any reason he, as weigher, should go out or be excused, it was plaintiff as Plant Keeper who had the authority to deny or grant said permission.

Plaintiff himself in his testimony admitted that "sometimes" the employees of his plant requested vacations and likewise admitted also, unwillingly, that he had to interfere with the time the weighers began and ended work.

Another witness for plaintiff, Roberto Levy, admitted that the former as Plant Manager could and in fact changed the shifts of the drivers assigned to his plant and in cases of absence he should notify his dispatcher.

In view of the evidence summarized, and specially plaintiff's own evidence, the determination of the trial court in the sense that plaintiff complied with this second requisite is supported by the evidence.

(c) Authority and recommendations as to hiring or firing and as to advancement and promotion or any other change of status.

The federal regulations (29 C.F.R. § 541.106) require that an exempt executive employee have the authority to hire or fire other employees or that his suggestions and recommendations as to hiring or firing and as to advancement and promotion or any other change of status of the employees whom he supervises will be given particular weight. Thus, no employee, whether high or low in the hierarchy of management, can be considered as employed in a bona fide executive capacity unless he is directly concerned either with the hiring or the firing and other change of status of the employees under his supervision, whether by direct action or by recommendation to those to whom the hiring and firing functions are delegated.

There is sufficient oral and documentary evidence in the record in the sense that appellant discharged functions in consonance with this requisite.

Witness Juncos testified that besides authorizing overtime, appellant imposed disciplinary sanctions on the employees under his supervision.

Witness Vázquez testified that appellant and the other Plant Managers recommended the hiring of laborers and that these recommendations were followed. And there is evidence in the record of temporary and permanent suspensions made by plaintiff of several employees under his supervision.

Insofar as per diems are concerned, there are in the record 15 sheets signed by appellant where it appears that several drivers were entitled to the per diems provided by the collective bargaining agreement and without said document they could not collect these per diems.

Desiderio Rodríguez, appellant's witness, testified as to the fulfillment of other requirements by appellant; that it was

appellant who authorized the vacations of the employees under him and who took disciplinary action against the employees under him and in fact he testified specifically about a case in which appellant took said action and which was afterwards sent before the Grievance Committee and to the Arbitration Procedure.

Appellant himself verified what was previously testified by the other witnesses as to this requirement and specifically as to vacations, delivery, per diems, and bonuses to other managers for the use of vehicle.

It is evident from what was set forth at the trial court as to this requirement, which we recited before, that the determination, in the sense that this requirement had been complied with, is amply supported by the evidence.

 (d) Who customarily and regularly exercises discretionary powers.

■ Section 541.107 of 29 C.F.R. specifically defines what is understood by discretionary powers. The federal regulations require that in order for an employee to be exempt as an executive, the latter must exercise discretionary powers, *customarily and regularly*. The phrase "customarily and regularly" signifies a frequency which must be greater than occasional but which, of course, may be less than constant. The requirement will be met by the employee who normally and recurrently is called upon to exercise and does exercise discretionary powers in the day-to-day performance of his duties. The requirement is not met by the occasional exercise of discretionary powers.

In the discussion of this requirement, appellant cites several cases in which the decision depended on the specific facts of each of said cases. Thus, then, in *Ratcliff* v. *Coca Cola*, 12 Labor Cases, 63,812 (1947), in the particular plant in which plaintiff Ratcliff worked he was constantly supervised by his superior who, although he was not present, telephoned

or relayed messages with the secretary directing him and making decisions pertinent to the use of discretion. The court in this case determined that Ratcliff's status as executive was more nominal than real. In *Rothman* v. *Publicker*, 22 Labor Cases, 67,382 (1953), defendant places principal emphasis upon the exercise of discretionary powers involved in the direction and control of a small cleaning force. Further on the court states that "In the circumstances of this case we think that the District Court was right in minimizing the significance of those small discretionary powers which normally inhere in any direction of the labor of others," in connection with the work which was done at the plant and that plaintiff did not exercise any direction or make any decision.

In the above-entitled case, in addition to the foregoing discussion as to the other requirements and the assignment of the discretionary functions exercised by plaintiff it is fitting to add others which arise from the evidence which the trial court had under its consideration; daily and constant determinations as to delivery hours of the product, the rhythm of delivery, the orders of aggregates, the assignment of units to specific projects in consonance with the volume of business, the coordination of the number of trucks assigned to each plant "when the other plant managers had not enough deliveries . . .", the authorization or rejection of cash sales and the fixing of extra charges in the prices, the determination of which drivers should deliver what orders on the basis of their special abilities, the assignment of specific trucks to certain drivers, the determination of priorities in daily deliveries, the settlement of clients' complaints concerning the delivery, the determination of daily work shifts.

The trial court did not err in concluding, in consonance with all the testimonies which it had before itself, that a great part of appellant's testimony did not deserve credit.[1]

---

[1] Appellant denied in his testimony that he had any discretionary

(e) Who does not devote more than 20% of his hours of work to activities which are not directly and closely related to the performance of the work described.

Section 541.108 of 29 C.F.R. establishes and defines in an unequivocal manner the phrase in conflict: *activities which are not directly and closely related to the performance of the work* which bring within the category of exempt work not only the actual management of the department and the supervision of the employees, but also the work which aids this end and contributes to the smooth functioning of the department for which the managers as executives are responsible as defined by the federal regulations. Thus, the keeping by a supervisor of production records of his own subordinates for use in supervision or control would be exempt work, while the maintenance of production records of employees not under his direction would not be exempt work. Another example would be the distribution of materials or merchandise and supplies. Maintaining control of the flow of materials or merchandise and supplies in a department is ordinarily a

---

functions and testified that all the functions of each of the plants were directly controlled by the Chief of Operations, engineer Félix Vázquez Álvarez.

According to appellant's testimony, it was engineer Félix Vázquez Álvarez who advanced or delayed the daily shifts of each and every one of the plants, testimony inconsistent with the testimony of his own witness Desiderio Rodríguez; that Vázquez' supervisory function was delimited to a daily visit to each plant; that when Vázquez did not perform that visit, Jorge Juncos, defendant's General Manager, would perform such supervision; that the plants belonging to appellee functioned without any direct supervision; that engineer Vázquez was the person who authorized lunch hours for the specific shovelers and weighers in each plant but he admits that "sometimes he granted that authorization"; he admitted his intervention as to vacations, as to the assignment of trucks, as to the bonus for the use of the vehicle of the other Plant Managers, and as to cash sales. Appellant stated that the Chief of Operations, engineer Félix Vázquez Álvarez, on an occasion when he was confined in his house, he supervised from his sickbed each and every one of defendant's plants in each and every one of the aspects which we have mentioned. This testimony correctly, in our judgment, did not deserve credit to the trial court.

responsibility of the managerial employee in charge. In some establishments the actual distribution of materials is a duty performed by nonexempt employees under the supervision of the department manager; therefore, the time devoted by the manager to such work is nonexempt work and must be included in the percentage of minimum clerical work permitted by the statute.

Setup work may be exempt under certain circumstances if performed by a supervisor, provided it is a regular activity of the executive and is directly and closely related to his responsibility for the work performance of his subordinates and for the adequacy of the final product.

Thus, for example, observing a machine is an obligation which might be exempt when it is performed by a supervisor under special circumstances. Obviously the mere observing of machines in operation cannot be considered as exempt work, as in some industries where the machinery is largely automatic, and this is an ordinary production function. Thus, an employee who observes the machines for the purpose of seeing that they operate properly, or for the purpose of making repairs or adjustments is performing *non*exempt work. On the other hand, a supervisor who observes the operation of the machinery in his department, in the sense that he keeps an eye out for trouble, is performing work which is directly and closely related to his managerial or supervisory responsibilities. To make an occasional adjustment in the machinery under these circumstances is exempt work.

From the evidence which was introduced before the court it arises that appellant did not work directly with any production machinery but that he supervised in order to be sure that there would be a normal rhythm of work and that these machines functioned adequately.

The preparation of some 40 delivery vouchers was the work that began all the operations in the plant which plaintiff

supervised. It was the motor force which put in movement all the production and distribution mechanism in which 30 workers were involved. The preparation of said vouchers took appellant from 20 to 25 minutes a day. During the workday plaintiff had to keep an eye on all the discretionary aspects which we have discussed under the foregoing headings.

In view of the foregoing we conclude that finding of fact number 11 of the trial court to the effect that the preparation of the vouchers was auxiliary and setup work for the production and that appellant devoted less than 20% of his time to this function is supported by the evidence, that appellee discharged the burden of the same, and that said finding should not be disturbed.

 (f) Who receives for his services a fixed compensation equal to a weekly wage of not less than $55 weekly between February 2, 1959 and until September 29, 1963, and $75 a week as of September 30, 1963.

Pursuant to the evidence that the trial court had for its consideration, it appears that plaintiff had been defendant's employee since September 10, 1959 until April 29, 1964. Since September 10, 1959 until December 7, 1960, the title of plaintiff's position was assistant Plant Keeper of defendant's plant number 1, as trainee, and, as it has already been indicated, he was paid for hours worked.

But subsequent to December 7, 1960, appellee's cumulative payment cards show that since that date, and until the week prior to July 5, 1961, appellant does not appear to be receiving amounts of money in cash since appellee paid him a fixed weekly salary *by check* of $60. It has to be kept in mind that the federal requirement for the salary of an executive between the dates of February 2, 1959 until September 29, 1963 was $55 weekly and that since September 30, 1963 to the present the requirement was $75 weekly.

Said cumulative payment cards also establish that since July 5, 1961 and until November 1 of the same year, appellant

received as a fixed salary in the payroll an amount of $70 weekly; that from November 8, 1961 and until July 31, 1962, he received a fixed weekly salary of $71; that as of August 7, 1962 and until September 11 of said year, he received a fixed salary of $75; that as of September 26, 1962 and until October 29, 1963, he received a fixed salary of $80 weekly, and that since November 5, 1963, until the termination of his employment on April 29, 1964, he received a fixed weekly salary of $85. The foregoing recital establishes that insofar as the requirement of salary is concerned, appellee complied with the federal regulations since December 7, 1960.

The case of *Harrison v. Preston Trucking Company*, 15 W.H. Cases 425 has certain similarity to the instant situation. In that case the trial court faced a situation which involved the status of a so-called dispatcher for a trucking firm. The court found that this employee was exempt from the provisions of the act. The duties which the employee performed were the following: (a) he supervised alone or in conjunction with another employee from 8 to 10 laborers and 20 truck drivers; (b) he recommended the firing and disciplinary action of drivers and took disciplinary action; (c) he discussed problems which arose concerning the workers with the Union delegate; (d) negotiated truck leases within certain limits; (e) assigned work; (f) selected truck routes; (g) and he was in charge of the operation of a division of the business when the terminal manager and the supervisor of said terminals were absent. In addition he received telephone calls, worked with the freight bills. The court concluded that these activities were directly and closely related to the exempt work and that, therefore, they did not exclude said employee from the exemption. See also, *Goldberg v. Arkansas Best Freight System*, 15 W.H. Cases 620 (1962); *Mitchel v. Branch Motor Express Co.*, 13 W.H. Cases 886 (1958); *Mooney v. Preston Trucking*, 215 F.Supp. 568; *Matos Veláz-*

*quez* v. *Proctor Manufacturing Corp.*, 91 P.R.R. 44 (1964) ; *Calderón* v. *Esso Standard Oil Co.*, 92 P.R.R. 124 (1965).

■ The trial judge weighed the conflicting oral evidence introduced before him and reached extensive findings of fact. These findings are amply supported by the evidence introduced and should not be set aside except in the case of manifest error, clear arbitrariness, or prejudice and passion, circumstances which are not present in the instant case. *Colón* v. *Mendoza*, 83 P.R.R. 293 (1961) ; *Commonwealth* v. *Cía. de Ferrocarriles de P.R.*, 83 P.R.R. 565 (1961). The fact that the trial court did not state separately the proven fact about the salaries earned by appellant since September 1963 is not an omission to warrant the reversal of the judgment rendered in this case. *Firpi* v. *Pan American World Airways, Inc.*, 89 P.R.R. 194 (1963).

Therefore, the judgment rendered by the trial court should be affirmed as to the period of appellant's work since November 30, 1960. The case should be remanded for said court to receive evidence about appellant's claim for the period from September 10, 1959 to December 7, 1960.

The Chief Justice, Mr. Justice Hernández Matos, Mr. Justice Santana Becerra, and Mr. Justice Rigau did not participate herein. Mr. Justice Dávila concurs in the result.