JOSÉ A. RODRÍGUEZ VELÁZQUEZ, querellante y recurrente, *v.* CONCRETO MIXTO, INC., querellada y recurrida.

*Número:* R-67-331    *Resuelto:* 12 de febrero de 1970

---

580

*Roberto Armstrong, Jr.,* abogado del recurrente; *Goldman, Antonetti & Subirá* y *David F. Barreto,* abogados de la recurrida.

PER CURIAM: Se plantea otra vez la cuestión de si un empleado es o no es un ejecutivo de un patrono durante la mayor parte del período cubierto por la querella.

Concluimos que el tribunal de instancia no incidió al concluir que el recurrente era un ejecutivo durante gran parte del referido período y que por lo tanto no procede la reclamación por horas extras radicada por el recurrente en relación con esa parte del período de su empleo. Incidió al así concluir con respecto al período comprendido entre el 10 de septiembre de 1959 y el 7 de diciembre de 1960 cuando el recurrente recibía paga a base de horas. Debe devolverse el caso para que se pase prueba ante el tribunal de instancia

sobre la procedencia de la reclamación del recurrente durante el referido período inicial de su empleo con la recurrida.

La reclamación cubre un término desde el 10 de septiembre de 1959 hasta el 29 de abril de 1964. Alega que la recurrida adeuda al recurrente la suma de $13,034 más una suma igual en concepto de daños y perjuicios y honorarios, por razón de horas trabajadas en exceso de (a) ocho horas diarias; (b) de cuarenta horas a la semana y por razón de haber trabajado durante la hora destinada a tomar alimentos.

Negada las alegaciones de la querella, e interpuesta la defensa especial de que la querella deja de exponer una reclamación que justifique un remedio toda vez que para las fechas a que se contrae la querella el recurrente era un administrador ejecutivo y superior de la empresa recurrida, el tribunal de instancia desestimó la querella por razón de que "el recurrente cumplía mientras fue empleado por la recurrida con todos y cada uno de los requisitos enunciados por el Administrador Federal en el 'Code of Federal Regulations', sec. 541.1 y, por ende, que mientras fue empleado de la recurrida lo fue en carácter o en capacidad bona fide de ejecutivo, estando por tanto incluido dentro de la definición de Patrono de la Sec. 19 de la Ley Núm. 379, 29 L.P.R.A. sec. 288 y excluido de la definición de empleado de la misma." Hizo extensas conclusiones de hecho en las que basó el referido dictamen.

1.—Apunta el recurrente que el tribunal de instancia incidió al concluir que (a) "a las fechas envueltas en la querella se consideraba a un empleado con capacidad bona fide de ejecutivo como aquél que . . . recibe compensación por sus servicios a base de un salario semanal no menor de $55.00 ó de $30 a la semana si está empleado en P.R. . . ."; (b) el recurrente era un ejecutivo durante períodos en que recibía semanalmente la suma de $50.00 por las horas trabajadas a la semana o durante el período en que era asistente del *Plant keeper* de la planta núm. 1 de la recurrida. Éstos son los

primeros tres y el quinto apuntamientos del recurrente. El período a que se refieren estos apuntamientos es el que se extiende entre el 10 de septiembre de 1959 y el 7 de diciembre de 1960, cuando el recurrente recibía paga a base de horas y por lo tanto no cumplía con los requisitos de ejecutivo (29 C.F.R. sec. 541.1 (f) ). Así lo admite la recurrida. Habiéndose limitado la vista de este caso a pasar prueba sobre la defensa de que el recurrente ocupaba una plaza de ejecutivo durante todo el tiempo que estuvo empleado por la recurrida, procede, como indica la recurrida, que se devuelva el caso al tribunal de instancia para que reciba prueba sobre la reclamación del recurrente por el período de su empleo con la recurrida comprendido entre el 10 de septiembre de 1959 y el 7 de diciembre de 1960.

2.—Los apuntamientos cuarto y sexto van dirigidos a cuestionar la conclusión del tribunal de instancia al efecto de que a partir de diciembre de 1960 el recurrente era un ejecutivo de la recurrida.

El reglamento de la Ley Federal de Normas Razonables del Trabajo, 29 *Code of Federal Regulations*, sec. 541.1, que es el aplicable al caso que nos ocupa, provee los requisitos que debe llenar un empleado para que pueda considerarse una "persona empleada en una capacidad ejecutiva bona fide." Examinaremos a continuación la prueba aducida a fin de determinar si sostiene o no la conclusión del tribunal de instancia de que desde diciembre de 1960 hasta que cesó en su empleo en abril de 1964, el recurrente ejerció las funciones de un ejecutivo y por lo tanto no tenía derecho a recibir paga adicional por trabajar horas extras. Los requisitos en cuestión son los siguientes:

(a) Que su deber promordial consistió en la dirección de la empresa en que trabajaba o de un habitual reconocido departamento o subdivisión de la empresa.

■ En 29 C.F.R. sec. 541.102 se especifican los deberes y obligaciones usuales de un puesto en particular para que se pueda clasificar al que lo ocupa como un ejecutivo *bona fide*. Es generalmente aceptado que funciones en categoría de ejecutivo son: entrevistar, seleccionar y entrenar empleados; establecer y ajustar su paga y horas de trabajo; dirigir su trabajo; mantener su producción o récords de ventas para la supervisión y control; apreciar o aquilatar la productividad y eficacia de los empleados para propósitos de recomendación a promociones u otros cambios en el status de los que están debajo de él; atender sus quejas y disciplinarlos cuando es necesario; planear el trabajo, determinando la técnica a usarse; repartir el trabajo entre los trabajadores; determinar el tipo de materiales, el inventario, máquinas o utensilios a ser usados o guardados; controlar el flujo y distribución de materiales o mercancía; velar por la seguridad de los empleados y de la propiedad, y, en general, ser la persona que coordine el buen funcionamiento de la división de la empresa que está a su cargo.

La prueba no contradicha ante el tribunal demuestra que entre las 15 a 20 compañías que manufacturan cemento premezclado en Puerto Rico, la querellada-recurrida se encuentra entre las primeras tres; que la operación de estas empresas es a base de plantas supervisadas bajo las órdenes de llamados *Plant managers*; que el querellante como *Plant manager* de la planta número uno supervisaba directamente de uno a dos pesadores, un palero y de seis a siete chóferes. Era el querellante-recurrente quien asignaba las horas en que podía entregar las órdenes de su planta. En este aspecto el propio testigo del querellante, Señor Desiderio Rodríguez Rivera corrobora que era el querellante quien fijaba las horas de despacho. El querellante además determinaba el ritmo de entrega y era además la persona que coordinaba con los clientes de la querellada todo lo relacionado con el servicio de la

planta a su cargo en problemas tales como entregas y frecuencia de las mismas y quejas en cuanto a dichos servicios.

Asimismo era el querellante quien citaba al personal para las operaciones del próximo día y adelantaba o atrasaba las horas de entrada según fuera necesario para la producción y por lo tanto autorizaba el trabajar horas extras cuando era necesario; ordenaba materiales según lo requiriera la operación; asignaba los camiones necesarios para cada proyecto al cual se le estaba sirviendo material desde su planta; coordinaba como gerente de la planta número 1 que hubiera suficientes camiones en cada una de las plantas de la querellada; autorizaba o rechazaba ventas en efectivo de acuerdo al volumen de negocios que estuviera realizándose; asimismo fijaba recargos dentro de ciertos límites cuando se retrasaba el despacho y entendía el querellante que esto era atribuible al cliente. En adición, el querellante asignaba a los chóferes de su planta diferentes camiones y determinaba las prioridades en la entrega de órdenes. El propio testigo del querellante Señor Roberto Levy declaró que una de las funciones discrecionales del querellante era la asignación de diferentes camiones a cada uno de los chóferes asignados a su planta.

El querellante en su alegato da inusitada importancia al hecho de que venía obligado a preparar ciertos conduces que servían de órdenes a los chóferes. Sin embargo, la prueba demuestra que el querellante preparaba de 35 a 40 conduces diarios y que la preparación de cada conduce tomaba entre 25 a 30 segundos. Como se verá por una simple operación matemática, el término de tiempo invertido en esta actividad era mínimo. No hay duda que, como concluyó el tribunal a quo, la preparación de estos conduces era una actividad directa e íntimamente relacionada con el trabajo exento del querellante.

Atendido lo anteriormente expuesto entendemos que el tribunal inferior no incidió al concluir que el deber primordial del querellante en el período que nos ocupa (7 de diciem-

bre de 1960 a abril de 1964) era la de dirección de un habitual y reconocido departamento o subdivisión de la querellada.

(b)  Que habitual y regularmente dirija el trabajo de otros dos o más empleados de la empresa.

El querellante en su alegato apunta que en la planta en que trabajaba habían otros gerentes de planta con sus mismas funciones y responsabilidades supervisando las mismas personas. La prueba demuestra que esta situación únicamente ocurrió antes del 7 de diciembre de 1960. Del 7 de diciembre de 1960 en adelante, era el querellante el único gerente de planta número 1 de la recurrida.

El testigo del querellante, Desiderio Rodríguez, demuestra que esta situación de supervisisión existía. Testificó que el querellante reglamentaba sus horas de entrada al trabajo y también determinaba las horas de salida, que según el testigo, "podía ser a las 4:00 P.M., 5:00 P.M., 6:00 P.M., 7:00 P.M. o nos amanecemos." Y declara también este testigo sobre la supervisión directa y dirección del querellante sobre los paleros, pesadores y chóferes en el sentido que era el querellante el que le decía a los chóferes a donde tenían que ir y que todos los obreros de la planta le respondían al *Plant keeper*. También expresó que si por cualquier razón él como pesador debía salir o excusarse, era el querellante como *Plant keeper* quien tenía la autoridad para denegar o conceder dicho permiso.

El propio querellante en su testimonio admitió que "a veces" los empleados de su planta le solicitaban vacaciones y así mismo admitió también, a regañadientes, que tenía ingerencia en la dirección de las horas de entrada y salida de los pesadores.

Otro testigo del querellante, Roberto Levy, admitió que éste como *Plant manager* podía y de hecho cambiaba los turnos de los chóferes adscritos a su planta y en caso de ausencia debía notificar a su *dispatcher*.

En vista de la prueba reseñada, y en especial de la *propia* prueba del querellante, la determinación del tribunal a quo en el sentido de que el querellante cumplía con este segundo requisito está sostenido por la prueba.

(c) Autoridad y recomendaciones de empleo, Despido, Ascensos o Cambio de status.

El reglamento federal (29 C.F.R. parte 541. 106) requiere que un ejecutivo exento tenga la autoridad de emplear o despedir otros empleados o que sus sugerencias y recomendaciones para emplear o despedir y para promociones o cualquier otro cambio de status de los empleados a quien él supervisa se le dará debida consideración. Por lo tanto, a ningún empleado que esté alto o bajo en la jerarquía de la administración, puede considerársele como un ejecutivo *bona fide* a menos que esté directamente conectado con la selección o despido de empleados y otros cambios de status de los empleados que él supervisa por acción directa o por recomendación a aquellos que tienen como función primordial el emplear o despedir los empleados.

Hay suficiente evidencia testifical y documental en el récord de que el recurrente ejercía funciones en armonía con este requisito.

Declara el testigo Juncos que además de autorizar horas extras, el recurrente imponía sanciones disciplinarias a los empleados bajo su supervisión.

Declara el testigo Vázquez que el recurrente y los demás *Plant managers* recomendaban empleo de obreros y que estas recomendaciones eran seguidas. Y hay evidencia en el récord de suspensiones permanentes y temporeras por el querellante de varios empleados a su cargo.

En cuanto a dietas se refiere, obran en autos 15 pliegos firmados por el recurrente donde consta que varios chóferes eran acreedores de las dietas que dispone el convenio colectivo y sin cuyo documento no podrían éstos cobrar dichas dietas.

Testificó Desiderio Rodríguez, testigo del recurrente, el cumplimiento de otros requisitos por el recurrente; que era el recurrente quien autorizaba las vacaciones de los empleados bajo su cargo y que tomaba acción disciplinaria contra los empleados a su cargo y de hecho testificó específicamente sobre un caso en que el recurrente tomó dicha acción y que luego pasara al Comité de Quejas y Agravios y al Procedimiento de Arbitraje.

El propio recurrente verifica lo testificado anteriormente por los demás testigos en cuanto a este requisito y específicamente en cuanto a vacaciones, despacho, dietas y bonos a otros gerentes por uso de vehículo.

Resulta evidente de lo expuesto en el tribunal a quo en cuanto a este requisito, el cual reseñáramos anteriormente que la determinación en el sentido de que se cumplía con este requisito, está ampliamente sostenida por la prueba.

    (d)  Que habitual y regularmente ejerza facultades discrecionales.

En 29 C.F.R. la parte 541.107 se define específicamente lo que se entiende por poderes discrecionales. Requiere el reglamento federal que para que un empleado esté exento como ejecutivo, éste, como *costumbre y regularmente*, ejercite poderes discrecionales. La frase "como costumbre y regularmente" significa una frecuencia que tiene que ser más que ocasional pero que por supuesto, puede ser menos que constantemente. El requisito se puede llenar por un empleado que normalmente y regularmente es llamado a ejercer y de hecho ejercita poderes discrecionales en el ejercicio de su trabajo. El requisito no se llena por el ejercicio ocasional de los poderes discrecionales.

En la discusión de este requisito, el recurrente cita varios casos en los que el resultado dependió de los hechos específicos en cada uno de dichos casos. Así, pues, en *Ratcliff* v. *Coca Cola*, 12 Labor Cases, 63, 812 (1947), en la planta particular en que el querellante Ratcliff trabajaba, éste era constante-

mente supervisado por su superior que, aunque no estaba presente, llamaba por teléfono o dejaba mensajes con la secretaria dirigiéndolo y tomando las decisiones pertinentes al uso de discreción. El tribunal en este caso determinó que el status de ejecutivo de Ratcliff es más nominal que real. En *Rothman* v. *Publicker*, 22 Labor Cases, 67, 382 (1953), la querellada en el caso enfatiza el ejercicio de la discreción en cuanto a la dirección y control de un grupo pequeño de los que se encargaban de hacer la limpieza. Más adelante dice la corte que "en las circunstancias de este caso, nosotros creemos que el Tribunal de Distrito estaba en lo correcto cuando minimizó el significado de esos poderes discrecionales sin importancia que normalmente son inherentes a la dirección del trabajo de otros, en relación al trabajo que se hacía en la planta y que el querellante no ejerció ninguna dirección ni tomaba ninguna decisión."

En el caso de epígrafe, en adición a la discusión anterior en cuanto a los otros requisitos y el señalamiento a las funciones discrecionales ejercidas por el querellante cabe añadir otras que surgen de la prueba que tuvo el tribunal a quo ante su consideración; determinaciones diarias y constantes sobre las horas de entrega del producto, el ritmo de entrega, las órdenes de agregados, la asignación de unidades a proyectos específicos de acuerdo al volumen de negocios, la coordinación del número de camiones asignados a cada planta "cuando los demás 'plant managers' estaban flojos de despacho . . .", la autorización o rechazo de ventas al contado y la fijación de recargo en los precios, la determinación de qué conductores deben repartir qué órdenes a base de sus habilidades especiales, la asignación de camiones específicos a conductores determinados, la determinación de prioridades en entregas diarias, la resolución de quejas de los clientes relacionados con el despacho, la determinación de turnos diarios de trabajo.

No incidió el tribunal de instancia al concluir, de acuerdo a toda la prueba testifical que tuvo ante sí, que no le mereció crédito gran parte del testimonio del recurrente.(¹)

    (e)  Que no dedique más del 20% de las horas trabajadas a actividades que no estén directa e íntimamente relacionadas con el desempeño del trabajo descrito.

En 29 C.F.R. parte 541.108 se establece y define de manera inequívoca la frase en controversia: *actividades que no estén directa e íntimamente relacionadas con el desempeño del trabajo* que elevan a la categoría de trabajo exento no solamente al trabajo de administración del departamento y la supervisión de los empleados, sino también el trabajo que ayuda a este fin y contribuye al funcionamiento continuo del departamento del cual son responsables los administradores en calidad de ejecutivos según los define el reglamento federal. Así, el que un supervisor de producción mantenga récords de sus subordinados para ayudarlo a supervisar y

---

(¹) El recurrente negó en su testimonio que tuviera función discrecional alguna y declaró que todas las funciones de cada una de las plantas eran controladas directmente por el jefe de operaciones ingeniero Félix Vázquez Álvarez.

De acuerdo con el testimonio del recurrente, era el ingeniero Félix Vázquez Álvarez quien adelantaba o atrasaba los turnos diarios de todas y cada una de las plantas, testimonio en contradicción al de su propio testigo Desiderio Rodríguez; que la función de supervisión de Vázquez se circunscribía a una visita diaria a cada planta; que cuando Vázquez no realizaba esa visita la supervisión la llevaba a cabo el Señor Jorge Juncos, Gerente General de la querellada; que las plantas pertenecientes a la recurrida funcionaban sin supervisión directa alguna; que el ingeniero Vázquez era la persona que autorizaba las horas de almuerzo para los paleros y pesadores específicos en cada planta pero admite que "a veces él concedía esta autorización"; admitió su ingerencia en cuanto a vacaciones, en cuanto a la asignación de camiones, en cuanto a la bonificación por el uso del vehículo de los demás *Plant managers* y en cuanto a las ventas de contado. Afirmó el recurrente que el Jefe de Operaciones, ingeniero Félix Vázquez Álvarez, en una ocasión en que estuvo recluido en su hogar supervisaba desde su cama de enfermo todas y cada una de las plantas de la querellada en todos y cada uno de los aspectos que hemos mencionado. Este testimonio, con razón, a nuestro juicio, no le mereció crédito al tribunal a quo.

controlar sería trabajo exento, mientras que el mantenimiento de récords de producción de empleados que no están bajo su dirección no sería trabajo exento. Otros sería la distribución de materiales o mercancía e inventario. Mantener control del movimiento de materiales, mercancía o inventario en un departamento es ordinariamente la responsabilidad del empleado supervisor a cargo. En algunos establecimientos la distribución de materiales en sí es una tarea efectuada por empleados no exentos bajo la dirección del administrador del departamento; por lo tanto, el tiempo dedicado por el administrador a esta tarea no es trabajo exento y se tiene que añadir al por ciento de trabajo clerical mínimo permitido por el estatuto.

El trabajo preparatorio son actividades exentas bajo ciertas circunstancias si son efectuadas por un supervisor, siempre y cuando sea una actividad regular del ejecutivo y esté directa e íntimamente relacionada con su responsabilidad para que el trabajo de sus subordinados se haga y tenga un producto final adecuado.

Así, por ejemplo, la observación de maquinaria es una obligación que podría estar exenta cuando es efectuada por un supervisor bajo circunstancias especiales. Obviamente la mera observancia de maquinaria en operación no se puede considerar como trabajo exento, como en algunas industrias donde la maquinaria es mayormente automática y ésta es una función ordinaria de producción. Así, un empleado que observa las máquinas para el propósito de asegurarse que ellas operan efectivamente o para el propósito de hacerles reparaciones o ajustes está efectuando trabajo *no* exento. Por otro lado, un supervisor que observa la operación de la máquina en su departamento en el sentido de mantenerse en alerta por cualquier peligro, está efectuando trabajo que está directa e íntimamente relacionado con el desempeño del trabajo como administrador o supervisor. Hacerle un ajuste

ocasional a la máquina bajo estas circunstancias es trabajo exento.

De la prueba que desfiló ante el tribunal surge que el recurrente no trabajaba directamente con ninguna máquina de producción sino que supervisaba para tener seguridad de que hubiese un ritmo normal de trabajo y que estas máquinas funcionaban adecuadamente.

La preparación de unos 40 conduces era la labor que daba inicio a todas las operaciones de la planta que supervisaba el querellante. Era la fuerza motriz que ponía en movimiento todo el mecanismo de producción y distribución en el cual se encontraban envueltos alrededor de 30 trabajadores. La preparación de dichos conduces le tomaba al recurrente de 20 a 25 minutos al día. En el transcurso del día de trabajo el querellante debía estar atento a todos los aspectos discrecionales que hemos discutido bajo los epígrafes anteriores.

En vista de lo expuesto concluimos que la determinación de hecho número 11 del tribunal a quo al efecto de que la preparación de los conduces era labor auxiliar y preparatoria para la producción y que el recurrente dedicaba menos del 20% de su tiempo a esta función está sostenida por la prueba, que la recurrida descargó el peso de la misma y que dicha determinación no debe ser alterada.

    (f) Que reciba por sus servicios una compensación fija equivalente a un sueldo semanal no menor de $55.00 semanales entre el 2 de febrero de 1959 y hasta el 29 de septiembre de 1963 y $75.00 semanales a partir del 30 de septiembre de 1963.

Según la prueba que tuvo ante su consideración el tribunal de instancia, surge que el querellante fue empleado de la querellada desde el 10 de septiembre de 1959 hasta el 29 de abril de 1964. Desde el 10 de septiembre de 1959 hasta el 7 de diciembre de 1960, el título de la plaza del querellante era la de asistente al *Plant keeper* de la planta

número 1 de la querellada, en calidad de entrenamiento, y, como ya se señaló, se le pagaba por horas trabajadas.

Pero posteriormente al 7 de diciembre de 1960, las tarjetas acumulativas de pago de la recurrida demuestran que a partir de esa fecha, y hasta la semana anterior al 5 de julio de 1961, el recurrente no aparece devengando cantidades en dinero pues la recurrida le pagaba un salario semanal fijo *por cheque* de $60.00. Hay que tener en mente que el requisito federal de salario de ejecutivo entre las fechas 2 de febrero de 1959 hasta el 29 de septiembre de 1963 era de $55.00 semanales y que a partir del 30 de septiembre de 1963 al presente el requisito es de $75.00 semanales.

Demuestran, además, las referidas tarjetas acumulativas de pago que a partir de 5 de julio de 1961 y hasta el 1 de noviembre de dicho año, el recurrente recibió como paga fija por nómina una suma de $70.00 semanales; que a partir del 8 de noviembre de 1961 y hasta el 31 de julio de 1962 recibió una paga fija semanal de $71.00; que a partir del 7 de agosto de 1962 y hasta el 11 de septiembre de dicho año recibió una paga fija de $75.00; que a partir del 26 de septiembre de 1962 y hasta el 29 de octubre de 1963 recibió una paga fija de $80.00 semanales; y que a partir del 5 de noviembre de 1963 hasta la terminación de su empleo en 29 de abril de 1964 recibió una paga fija semanal de $85.00. La anterior relación demuestra que en cuanto al requisito de salario respecta, la recurrida cumplió con el reglamento federal a partir del 7 de diciembre de 1960.

El caso de *Harrison* v. *Preston Trucking Company*, 15 WH Cases 425 guarda cierto paralelo con la presente situación. En aquel caso el tribunal se enfrentó a una situación que envolvía el status de un llamado *dispatcher* para una firma camionera. El tribunal encontró que este empleado estaba exento de las disposiciones de la ley. Las funciones que realizaba el empleado eran las siguientes: (a) supervisaba

por sí o junto a otro empleado de 8 a 10 obreros y 20 chóferes; (b) recomendaba el despido y acción disciplinaria en relación con los chóferes y tomaba acción disciplinaria; (c) discutía los problemas que surgían en relación con los obreros con el delegado de la Unión; (d) negociaba contratos de arrendamiento de camiones dentro de ciertos límites; (e) asignaba trabajos; (f) seleccionaba rutas de camiones; y (g) estaba a cargo de la operación de una división del negocio cuando se ausentaba el gerente de la terminal y el supervisor de dichos terminales. En adición recibía llamadas telefónicas, trabajaba con los conocimientos de embarque. El tribunal concluyó que estas actividades estaban directa e íntimamente relacionadas con el trabajo exento y que, por lo tanto, no excluían de la exención a dicho empleado. Véanse, también, *Goldberg* v. *Arkansas Best Freight System*, 15 WH Cases 620 (1962); *Mitchel* v. *Branch Motor Express Co.*, 13 WH Cases 886 (1958); *Mooney* v. *Preston Trucking*, 215 F.Supp. 568; *Matos Velázquez* v. *Proctor Manufacturing Corp.*, 91 D.P.R. 45 (1964); *Calderón* v. *Esso Standard Oil Co.*, 92 D.P.R. 129 (1965).

El juez sentenciador aquilató la evidencia testifical contradictoria presentada ante sí y llegó a extensas conclusiones de hecho. Estas conclusiones tienen amplia base en la prueba desfilada y no deben dejarse sin efecto excepto en el caso de error manifiesto, clara arbitrariedad o prejuicio y pasión, circunstancias que no se dan en el presente caso. *Colón Calixto* v. *Mendoza*, 83 D.P.R. 303 (1961); *E.L.A.* v. *Compañía de Ferrocarriles*, 83 D.P.R. 587 (1961). El hecho de que el tribunal sentenciador haya dejado de exponer por separado el hecho probado de los salarios percibidos por el recurrente a partir de septiembre de 1963 no es una omisión que motiva la revocación de la sentencia dictada en este caso. *Firpi* v. *Pan American World Airways, Inc.*, 89 D.P.R. 197 (1963).

*Por lo tanto, deberá confirmarse la sentencia dictada por el tribunal de instancia en cuanto al período de trabajo del recurrente a partir del día 30 de noviembre de 1960. Debe devolverse el caso para que dicho tribunal reciba prueba sobre la reclamación del recurrente por el período de 10 de septiembre de 1959 a 7 de diciembre de 1960.*

El Señor Juez Presidente y los Jueces Asociados Señores Hernández Matos, Santana Becerra y Rigau no intervinieron. El Juez Asociado Señor Dávila concurre en el resultado.