# 2006 DTA 102

**TRIBUNAL DE APELACIONES**
**RqEGIÓN JUDICIAL DE GUAYNABO**

AMBIENTI ITALIANI CORP.
Apelado

v.

RICHARD COLLAZO Y SU ESPOSA MARÍA DEL CARMEN TABOAS Y
LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Apelantes

Núm. KLAN-05-01209

San Juan, Puerto Rico, a 9 de agosto de 2006

Panel especial integrado por su Presidente, el Juez Arbona Lago,
el Juez Miranda De Hostos y la Juez Pabón Charneco

Pabón Charneco, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos Richard Collazo y María del Carmen Taboas, en adelante, los apelantes, solicitando la revocación de una Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Guaynabo. Mediante dicho dictamen, el tribunal *a quo* declaró Con Lugar la Demanda instada en su contra por Ambienti Italiani Corp., en adelante, la apelada.

Por las razones que se esbozan a continuación, se confirma la Sentencia apelada.

### I

Conforme surge del expediente ante nuestra consideración, el 4 de septiembre de 2003, la apelada interpuso Demanda sobre cobro de dinero contra los apelantes al amparo de la Regla 60 de las de Procedimiento Civil, 32 L.P.R.A. Ap. II, R. 60. En dicho escrito, la apelada alegó que los apelantes le adeudaban la suma de $1,527.95 por concepto de la venta e instalación de materiales.

La apelada arguyó que los requerimientos de pago habían resultado infructuosos por lo que se instaba la acción de epígrafe. A tales efectos, se alegó que la deuda estaba vencida, líquida y exigible. La apelada solicitó se declarara Con Lugar la demanda instada y se ordenara a los apelantes satisfacer la suma adeudada, más los intereses legales, costas, gastos y honorarios de abogado.

Los apelantes incoaron alegación responsiva negando lo aseverado en la Demanda. A su vez, incoaron Reconvención. En la misma, se alegó lo siguiente:

*"1. En o alrededor del 12 de diciembre de 2002, el Sr. Richard Collazo (apelante) ordenó a la parte demandante (apelada) unos topes de 56 pies cuadrados, aproximadamente y sujeto a verificación, de granito color "Madura Gold". Se calculó el precio en $2,800.00 por el granito y $300.00 por realizar los cuatro (4) huecos para cuatro (4) lavamanos a razón de $75.00 cada uno.*

*2. La fecha de entrega se estipuló sería en la primera semana de febrero de 2003.*

*3. En o alrededor del 22 de abril de 2003, la demandante (apelada) y/o sus agentes y/o principal, la entidad Borinquen Marble, Inc., efectuaron el primer intento de instalación.*

*4. Durante el primer intento de instalación, se descubrió que la demandante (apelada) había abierto uno de los huecos para el lavamanos del cuarto principal incorrectamente. Esto es, debió haber sido a la derecha y el hueco estaba a la izquierda (mirando de frente). La demandante (apelada) y/o su agente y/o principal, Borinquen Marble, Inc., retiró dicha plancha para construir un tope con la especificación (apertura para lavamano [sic]) correcta, esto es, a la derecha.*

*5. Al cabo de un tiempo, que en este momento la parte demandada-reconveniente (apelante) no puede*

*precisar, pero que debe surgir de los récords de la demandante (apelada), se anunció una nueva instalación para el tope incorrectamente trabajado originalmente por la demandante (apelada).*

*6. El contraste entre el material originalmente escogido por la demandada (apelada), e incorrectamente trabajado por la demandante (apelada), y el material utilizado para construir el segundo tope (debido al error de la demandante (apelada) en la localización del hueco del lavamano [sic]), era tan irritante a la estética, que era necesario sustituirlo.*

*7. El tope, erróneamente trabajado por la demandante (apelada) y luego sustituido por ésta, está localizado al lado y contiguo (en ángulo de 90%) [sic], con otro de los topes vendido por la demandante (apelada) y la diferencia en ambos era tan marcada que era imposible dejar ambos uno al lado del otro.*

*8. María del Carmen Taboas (apelante) tuvo que ausentarse de su trabajo en horas laborables, e invertir una enorme cantidad de tiempo y esfuerzo en visitas a múltiples establecimientos para intentar conseguir una pieza que constituyera el segundo tope que trajo la demandante (apelada). La ansiedad y la presión de tiempo le produjeron daños y perjuicios. El matrimonio invirtió fines ·de semana en viajes a la isla, en específico Arecibo, para intentar localizar el material que permitiera sustituir el tope instalado por la demandante (apelada) y/o su agente y/o principal Borinquen Marble, Inc. En esta época, la construcción de la residencia estaba en sus etapas finales, lo que requería del poco tiempo disponible del matrimonio. Finalmente, luego de mucho esfuerzo, la Sra. María del Carmen Taboas (apelante) encontró una pieza cuyo tamaño fue suficiente para cambiar el tope. Hubo que pagar nuevamente el costo del material y el trabajo.*

*9. Ya que el tope tenía que ser sustituido, no podían instalarse las mezcladoras, atrasando ello la terminación de la obra y la mudanza a la nueva residencia.*

*10. Otro de los topes instalado por la demandante y/o su agente y/o principal Borinquen Marble, Inc. tiene varias manchas. Sin embargo, no se encontró suficiente material para sustituirlo.*

*11. Ningún tope fue sellado por la parte demandante (apelada), manchándose éstos con agua al caer sobre su superficie. Los dueños de la casa tuvieron que hacer las gestiones para impermeabilizar los topes. En síntesis, la calidad del trabajo fue paupérrima.*

*12. La parte demandante (apelada) tomó las medidas incorrectas inicialmente, y por gestiones del demandado (apelante) señor Collazo fueron corregidas. Además, la demandante (apelado) hizo cita con el demandado (apelante) señor Collazo para la instalación, no vino y llamó luego de la hora pautada para indicar que no podían venir, haciendo que aquél perdiera su tiempo. El día de la nueva cita se descubrió el error en el hueco del tope y la demandante (apelada) había perdido el lavamano [sic] que el demandado (apelante) le entregó como muestra, para abrir los huecos. Corregir todos los anteriores errores de la demandante (apelado) necesitó de la inversión de tiempo y esfuerzo que no han sido compensados por la demandante (apelado).*

*13. Todo lo anterior causó tardanza, pérdida de tiempo, en finalizar la construcción y en el inicio de la mudanza, ansiedad, una inversión adicional de dinero en sustituir un tope y, por ende, daños y perjuicios tanto al Sr. Richard Collazo (apelante) como a su esposa María del Carmen Taboas (apelante), todo lo que se calcula en no menos de seis mil dólares ($6,000.00).*

*14. La inversión de tiempo y esfuerzo para sustituir el tope debió haber sido efectuada por la demandante (apelada) para realizar así el trabajo de calidad que se le contrató.*

*15. La demandante-reconvenida (apelada) incumplió el contrato con el compareciente (apelante).*

*16. No obstante todo lo anterior, la parte demandada-reconveniente (apelante), en aras de evitar un litigio, ofreció a la parte demandante (apelada) una oferta que rechazó."*

Véase, págs. 4-6 del Apéndice.

Trabada la controversia entre las partes, el 9 de octubre de 2003, los apelantes solicitaron que el caso se tramitara bajo el procedimiento ordinario y no bajo el procedimiento expedito de la Regla 60 de las de Procedimiento Civil, *supra*, siendo concedida dicha petición.

Trabada la controversia entre las partes, y luego de numerosos incidentes procesales, se celebró la vista en su fondo. El 7 de julio de 2005, el Tribunal de Primera Instancia emitió la Sentencia apelada.

Aquilatada la prueba testifical y documental, el tribunal *a quo* emitió las siguientes determinaciones de hechos, las cuales transcribimos *in extenso:*

*"1. Los demandados (apelantes), Richard Collazo y su esposa, María del Carmen Taboas, contrataron a Ambienti Italiani, una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, para comprar e instalar dos "vanity de baño". El mármol escogido por la parte demandada (apelante) se conoce como "Granito Madura Gold". El costo del material incluyendo la instalación fue de $2,927.95 que se facturó bajo (la factura) número 245 de 12 de diciembre de 2002.*

*2. La parte demandada (apelante) pagó al momento de poner la Orden la suma de $1,400.00 quedando a deber $1,527.95, que es la cantidad que se reclama en la demanda.*

*3. La primera vez que instalan los topes del granito, los instaladores se percatan que éstos fueron cortados erróneamente, siendo necesario [sic] una segunda instalación, cuyo costo lo asumió Ambienti Italiani.*

*4. El material usado en la segunda instalación fue seleccionado, igual que el material usado en la primera instalación, por la parte demandada (apelante), pero no hay evidencia creíble posible, de que se usó específicamente el material seleccionado por los demandados (apelantes) para los nuevos topes de vanity en esa segunda ocasión.*

*5. Luego de terminada la instalación, no surge de la prueba que la parte demandada (apelante) reclamara fallas en el material, ni en la mano de obra al vendedor demandante (apelado). No es hasta luego de radicada la demanda que la parte demandada (apelante) reclama mediante una Reconvención que el nuevo material instalado no era exactamente igual al que ya previamente había sido instalado. Los demandados (apelantes) no pudieron evidenciar que se quejaron del "nuevo" material oportunamente, ni de que exigieran cambio o reponer nuevo material a tenor con garantías de la venta. El único demandado (apelante) que declaró en el juicio no estaba presente cuando se entregó e instaló el material repuesto, ni pudo declarar que presentara alguna queja o exigencia oportunamente a los demandados (apelantes). Quien alegadamente se quejó fue quien no declaró en juicio, ni pudo ser contra-interrogada ante el testimonio irrefutado de la demandante (apelada).*

*6. La parte demandada (apelante) ofreció en evidencia una factura de un tal José A. Fuentes, que no declaró en juicio, de donde aparece una alegada instalación de topes en granito madura gold por la suma de $740.00 y ofreció en evidencia unas fotos donde alegadamente existen diferencias entre tonalidades de las piezas de granito. No obstante, no pudo evidenciar con prueba creíble al Tribunal de que se quejó oportunamente a los demandante (apelados), o que le requiriera corrección alguna o que les exigiera a tenor con la garantía o el contrato. Simplemente o se cruzó de brazos, no pagó la diferencia y buscó otra empresa para instalar un tope de granito a su gusto o sencillamente no evidenció su caso apropiadamente ante el Tribunal con evidencia directa. No abrigamos duda de que la demandada (apelante) sustituyó un tope de*

*granito para su "vanity", la duda es si en este caso el demandante (apelado) es responsable de este gasto de la demandada (apelante) y si ello imposibilita el cobro del demandante (apelado).*

*Los demandados (apelantes) no probaron que al demandante (apelado) se le deba penalizar por algo de lo cual no se le dio oportunidad eficiente de corregir si ello procedía. Ante ausencia de prueba, el Tribunal no puede suplirla. El demandante (apelado) probó su caso de acreencia con prueba incontestada. Los demandados (apelantes) deben lo reclamado.*

*En los contratos donde el comprador escoge el material, y el material escogido tiene características donde cada individuo puede tener su propio criterio, y tomando en cuenta que una pieza de granito no necesariamente luce igual al escogerse en el taller, que luego de cortada e instalada, no es propio penalizar al vendedor cuando la diferencia se limita a tonalidades en el material, y no en la calidad del producto o su mano de obra si el comprador no reclama sus derechos y notifica al vendedor sus quejas oportunamente.*

*El remover unilateralmente los topes de granito e instalar otros, ausente un desperfecto de material y/o mano de obra estipulado, es una determinación voluntaria de la parte demandada (apelante), que no debe perjudicar al que ofreció, entregó y puso la mano de obra para su correspondiente instalación del material comprado si la parte compradora aceptó la entrega e instalación y nunca elevó una querella a tenor con su contrato, a pesar de las gestiones de cobro hasta que fue demandada."*

Véase, págs. 262-265 del Apéndice.

En consecuencia, el tribunal *a quo* declaró Con Lugar la demanda incoada y No Ha Lugar la reconvención, por lo que condenó a los apelantes satisfacer al apelado la suma reclamada de $1,527.85, además de las costas, intereses legales y la suma de $500.00 en concepto de honorarios de abogado.

Inconforme, los apelantes instaron una *"Moción de Reconsideración"*.

El foro de instancia acogió la solicitud presentada. Evaluada la misma, emitió las siguientes determinaciones de hechos, enmendando así la Sentencia:

*"1. En primera instancia, nos parece válido un señalamiento referente a nuestra Determinación de Hechos Numero 5 que merece modificarse. A esos efectos enmendamos nuestra Sentencia en ese acápite a la última oración. Nuestra conclusión allí presume demasiado y ello debe ser modificado. No entendamos [sic], sin embargo, las referencias que aparentan ser similares, pero en el contexto que las expusimos no lo son, a saber, la primera, segunda y tercera oración del primer párrafo de esa Determinación de Hecho (número 5), así lo concluyó el tribunal luego de aquilatar la prueba. Tampoco enmendamos las últimas frases del penúltimo y último párrafo en cuanto al concepto "queja" porque el contexto en la cual se formulan es producto de la prueba aquilatada por el Tribunal.*

*Como expresamos, procederemos a enmendar la última frase de la última oración del párrafo 5 "...y no se quejó hasta que fue demandada". Esta aseveración de por sí no la puede inferir de esa manera absoluta el Tribunal. Lo que quiso decir el Tribunal lo aclaramos ahora. La demandada (apelante) (como parte) no formalizó ni presentó oportunamente querella o reclamación alguna hasta que fue demandada o al menos no presentó oportuna evidencia admisible en el juicio. La demandada (apelante) no reclamó se le rehiciera el tope que alegadamente le ofendía estéticamente. Hecha esa enmienda, mantenemos las demás referencias a "quejas".*

*2. Es improcedente pretender introducir evidencia no presentada oportunamente en juicio ni admitida en evidencia. Ese intento para corroborar su versión con un documento no presentado el día del juicio es*

*inadmisible en esta etapa. El único testigo de la demandada (apelante) no aportó evidencia creíble alguna de que formalizara querella alguna a los demandantes (apelados) por el "segundo" tope que se uniera a los ya existentes.*

*3. Las conclusiones de hechos en toda controversia las [sic] formula el Tribunal luego de aquilatar la prueba. El Tribunal, no la parte, es quien aquilata la evidencia. Ante admisión de parte relevo de prueba.*

*4. La demandada (apelante) nunca refutó que lo que acordó le fuera servido y la prueba de la demandante (apelada) verificó eso. Lo que intentó la demandada (apelante) fue que el Tribunal infiriese que lo servido no era lo acordado entre las partes. Las partes acordaron el corte e instalación de unos vanities de granito "Madura gold" según la clasificación acordada por el demandante (apelada). El demandante (apelada) cortó los vanities e instaló. Inicialmente cometió un error en una pieza y procedió a sustituir ese tope. Vea la demandada (apelante) que no puede reclamar un incumplimiento total de la demandante (apelada) cuando alega que el segundo tope rehecho e instalado para unirse al existente "resaltaba y ofendía la estética". Resulta improcedente equiparar, aun en ese supuesto, dicho proceder con un incumplimiento que permita concluir una exceptio adimpleti contractus.*

*En cuanto a la referencia del señor Collazo (apelante) con relación a la visita del señor Frías a inspeccionar los vanities, el codemandante (sic) (apelante) declaró que su esposa previamente habló con Lourdes Castillo y si bien no hubo objeción en cuanto al contenido y alcance de la alegada conversación, ello no puede implicar, como en efecto aparenta la abogada en su escrito, que el Tribunal venga obligado a merecerle credibilidad todo lo que escucha en un juicio de cualquier testigo. De igual forma habló dicho testigo codemandado de pormenores de la "vista" del señor Frías hasta que a preguntas en el tribunal aclaró que no estuvo presente en dicha vista. Razón por la cual concluimos que no era testigo de hechos confiable para declarar que ocurrió con el señor Frías. ¿Cómo puede concluir el Tribunal nada en relación al que dijo, hizo, o "rechaza" una persona que no sólo no declaró en juicio, sino que el que testifica que dicho señor Frías "fue a la casa a ver el trabajo, y que lo encontró todo bien "comenzado" a cobrar el balance adeudado "rechazando las quejas" ni siquiera estaba presente en esa alegada visita?*

*El Tribunal no establece las estrategias de los abogados ni dicta sus pautas al dilucidar las controversias de las partes. Pero tampoco puede inferir cosas foráneas a lo admisible, ni claudicar a su ejercicio de aquilatar la prueba. El Tribunal no escoge lo que cree le conviene a una parte, el Tribunal aquilata la prueba presentada admitida en evidencia y adjudicada conforme a derecho sobre los hechos que le merecieron credibilidad. Esos hechos están expuestos en nuestra Sentencia.*

*Con relación al "segundo tope" que fue cortado e instalado y todavía permanecía a la fecha del juicio en posesión de los demandados (apelantes) al Tribunal no se le presentó oportuna evidencia admisible alguna de que la demandada (apelante) no hubiere aceptado sin reserva el producto aun si hubiere constituido un incumplimiento parcial (porque no podía calificarse de alguna otra forma) o defectuoso. El alegado "Exhibit 1" de su Moción de Reconsideración no es exhibit porque no lo presentó en el juicio, aun cuando la suscribiente de dicha carta es la codemandada y la abogada (apelante) que litigó el caso. La persona que podía declarar sobre lo que alegadamente trascendió en la visita del señor Frías si ello ocurrió que pudiera constituir un rechazo a cumplir finalmente con lo acordado generando un posible cumplimiento defectuoso no declaró en juicio y sentó a declarar sobre ese evento a alguien que surgió en la vista que nunca estuvo presente en dicha reunión. Forzosamente este Tribunal no puede llegar más lejos con estos hechos."*

Inconforme, los apelantes acuden ante nos. El 22 de junio de 2006, concedimos término a la apelada para que presentara su alegato. Transcurrido dicho término sin que la apelada haya presentado dicho, alegato pero contando con el beneficio de la Exposición Narrativa de la Prueba, el alegato de los apelantes y los autos, procedemos a resolver.

## II

En su escrito, los apelantes plantean que incidió el Tribunal de Primera Instancia, toda vez que no procede una sentencia contra ellos en ausencia de evidencia a los efectos de que la apelada cumplió con lo que se obligó; incidió, ya que las reclamaciones por incumplimiento posteriores al incumplimiento del contrato por la apelada no son elementos de la causa de acción en cobro de dinero, por lo cual la parte apelante no presentó evidencia sobre ello, aunque la tenía, y ello no significa que procede la causa de acción de cobro de dinero; al emitir sentencia solidaria cuando no hubo evidencia de contrato alguno con la demandada María del Carmen Taboas, y tampoco de un compromiso de pago solidario; al imponer $500.00 de honorarios de abogado por temeridad; y al imponer cuantía por intereses.

## III

Es norma claramente establecida por el Tribunal Supremo de Puerto Rico que en ausencia de error manifiesto, pasión, prejuicio o parcialidad no se intervendrá a nivel apelativo con las determinaciones de hechos y adjudicación de credibilidad hecha en instancia por el juzgador de los hechos. *Argüello v. Argüello*, 155 D.P. R. 62 (2001); *Trinidad v. Chade*, 153 D.P.R. 280 (2001); *Quiñones v. Manzano*, 141 D.P.R. 139 (1996); *Orta v. Padilla*, 137 D.P.R. 927 (1995); *Vélez v. Srio. de Justicia*, 115 D.P.R. 529 (1984); *Ortiz v. Cruz Pabón*, 103 D. P.R. 939 (1975); *Rodríguez v. Concreto Mixto, Inc.*, 98 D.P.R. 579 (1970).

Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. *Argüello v. Argüello, supra*. La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. *Id.; Pueblo v. Bonilla Romero*, 120 D.P.R. 92 (1987). El juez sentenciador, ante quien deponen los testigos, es quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. *Argüello v. Argüello, supra*.

*"[L]a declaración de un testigo no contradicho sobre un hecho determinado, debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil o que por su conducta en la silla testifical se haga indigno de crédito"*. *Miranda Soto v. Mena Eró*, 109 D.P.R. 473 (1980); *Alicea v. Sucn. F. Gil Rivera*, 87 D.P. R. 789 (1963); *Villaronga, Com. v. Tribl. de Distrito*, 74 D.P.R. 331 (1953).

Aunque, de ordinario, el foro apelativo no interviene con la apreciación de la prueba que hacen los tribunales de instancia, sí lo hace cuando un balance racional, justiciero y jurídico de la totalidad de la prueba y de los documentos que obran en autos lleva a conclusiones distintas a las del tribunal de instancia. *Negrón Rivera y Bonilla, Ex Parte*, 120 D.P.R. 61 (1987).

Un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 181 (1985); *Pérez v. Hosp. La Concepción*, 115 D.P.R. 721, 728 (1984). No obstante, está claro que el arbitrio del juzgador de hechos es respetable, mas no absoluto. Por eso, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. Véase, *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8 (1987); *Vélez v. Srio. de Justicia, supra*.

## IV

Dentro del marco jurídico antes enunciado, procedamos a resolver la controversia de autos.

Los apelantes plantean como primer error que no procedía una Sentencia en su contra en ausencia de evidencia a los efectos de que la apelada cumplió con lo que se obligó. En la discusión de este error, la apelante

procede a exponer que el Tribunal de Primera Instancia llegó a conclusiones que dicha parte entiende no estaban apoyadas por la prueba. Esboza que el tribunal *a quo* concluyó que el material que se utilizó para la segunda instalación de los topes de granito era igual al que fue utilizado en la primera instalación, pero que no existía evidencia creíble posible de que el material utilizado era específicamente el que seleccionaron los apelantes.

Si bien es cierto que le correspondía a la apelada presentar evidencia respecto al material utilizado y que el mismo era el que los apelantes escogieron, no se trata aquí de un caso en el que el incumplimiento de contrato alegado en la Reconvención haya sido acogido por el Tribunal *a quo*. En otras palabras, los apelantes presentaron Reconvención junto a su Contestación a la Demanda. Dicha Reconvención alegaba un incumplimiento de contrato por parte de los apelados para con los apelantes. Dicha Reconvención fue denegada por el foro de instancia.

Respecto a los planteamientos en torno al testimonio del señor Frías, surge del expediente que los apelantes tuvieron oportunidad de contrainterrogar al testigo durante el juicio, pero objetaron su testimonio. El tribunal *a quo* entendió que quedó probada la existencia de la deuda; inclusive determinó que los apelantes no lograron probar el haber hecho reclamaciones válidas respecto a incumplimiento alguno con el trabajo realizado. Los apelantes no probaron que rechazaran la segunda instalación del tope de granito. De hecho, surge del expediente que se reemplazó el tope en controversia sin siquiera informarlo a la apelada.

Como segundo error se plantea que las reclamaciones posteriores al incumplimiento del contrato por la apelada no son elemento de la causa de acción de cobro de dinero, ni defensa contra dicha causa, por lo cual no presentaron evidencia de ello, aunque la tenían, y ello no significa que procede la causa de acción en cobro de dinero. Los apelantes presentaron Reconvención en la cual alegaron un incumplimiento de contrato el cual venía obligada a sustentar con evidencia suficiente ante el Tribunal de Primera Instancia. Conforme reseñado, dicha Reconvención fue denegada por el tribunal *a quo*. Las quejas posteriores sobre el alegado incumplimiento en el trabajo realizado por la apelada no son elementos de prueba para la acción de cobro de dinero, pero si lo eran para que los apelantes lograsen probar el mencionado incumplimiento. Consecuentemente, el tribunal de instancia determinó que dicho incumplimiento no había sido evidenciado. A su vez, dictaminó que la apelada había probado que procedía el cobro de dinero por un trabajo realizado y que no había sido pagado.

Plantean los apelantes, como tercer error, que erró el tribunal *a quo* al emitir sentencia solidaria contra ellos cuando no había evidencia de contrato alguno con la codemandada (apelante) María del Carmen Taboas, y tampoco compromiso de pago solidario.

Es norma conocida que las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil, 31 L. P.R.A. sec. 2992. Al pactar un contrato, las partes quedan obligadas al cumplimiento de sus términos como si se tratara de una ley. Al respecto, el Art. 1044 del Código Civil, 31 L.P.R.A. sec. 2994, señala que: *"[l]as obligaciones que nacen de los contratos, tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos." López Torres v. González Vázquez*, res. el 12 de noviembre de 2004, **2004 J.T.S. 179**; *Mercado Quilichini v. U.C.P.R.*, 143 D.P.R. 610 (1997).

Nuestro ordenamiento contractual está enmarcado en el principio de autonomía contractual entre las partes contratantes. A su amparo, éstas pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarias a las leyes, la moral y el orden público. Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372; *López Torres v. González Vázquez, supra; S.L.G. Irizarry v. S.L.G. García*, 155 D. P.R. 713 (2001). Por lo tanto, existe un contrato desde que una o varias personas consienten en obligarse a dar alguna cosa o prestar algún servicio. Art. 1206 del Código Civil, 31 L.P.R.A. sec. 3371; *Unisys Puerto Rico, Inc. v. Ramallo Brothers*, 128 D.P.R. 842, 852 (1991). Desde entonces, las partes se obligan no sólo al

cumplimiento de lo expresamente pactado, sino también a todas las circunstancias que sean conforme a la buena fe, al uso y a la ley. Art. 1210 del Código Civil, 31 L.P.R.A. sec. 3375; *López Torres v. González Vázquez, supra; Jarra Corp. v. Axxis Corp.*, 155 D.P.R. 764 (2001); *Colondres v. Bayrón*, 114 D.P.R. 833 (1983). Para que un contrato adquiera eficacia jurídica deben concurrir en el mismo tres elementos de carácter *sine qua non*, a saber (1) consentimiento de los contratantes, (2) objeto cierto que sea materia del contrato, (3) causa de la obligación que se establezca. Art. 1213 del Código Civil de Puerto Rico, 31 L.P.R.A. §3391; *Master Concrete Corp. v. Fraya S.E.*, 152 D.P.R. 616 (2000); *José Garriga Hijo, Inc. v. Cond. Marbella del Caribe Oeste*, 143 D.P.R. 927 (1997). De estos tres requisitos, es el consentimiento el que fragua el nacimiento del contrato. Al respecto, nos dice el Art. 1214 del Código Civil de P.R. que el consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que han de constituir el contrato. 31 L.P.R.A. §3401.

Concurridos, pues, estos requisitos, las partes tienen plena libertad de contratación. Por ende, las partes tienen plena facultad para hacer cualquier tipo de contrato, con cualquier nombre, con una gran excepción, y es que no existirá un contrato si resulta contrario a la ley, la moral u orden público. *In re: Pagán*, 117 D.P.R. 180; *Municipio de Ponce v. Roselló*, 136 D.P.R. 776 (1994).

En virtud de lo anterior, el Art. 1230 del Código Civil dispone que los contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez. 31 L.P.R.A. §3451. Por otro lado, en cuanto al cumplimiento de los términos del contrato, el Art. 1208 del Código Civil es enfático al disponer que tanto la validez como su cumplimiento, no se dejará al arbitrio de uno de los contratantes. 31 L.P.R.A. §3373. De surgir entonces controversia en cuanto a cuál fue la intención de las partes al momento de contratar, debemos atender principalmente, a los actos de éstos, anteriores, coetáneos y posteriores al contrato. Art. 1234, 31 L.P.R.A. §3472; *Marina v. Brown Boveri*, 114 D.P.R. 64 (1983). Se tomarán en cuenta además todas las circunstancias indicativas de la voluntad de las partes. *García López v. Méndez*, 102 D.P.R. 383 (1974).

Los apelantes entienden que quien está obligado al pago de lo debido es el apelante, Richard Collazo. Si bien la apelante, María del Carmen Taboas, no suscribió el contrato, al tribunal *a quo* le mereció crédito y confiabilidad la evidencia presentada a los efectos de que la apelante María del Carmen Taboas participó en la selección del material utilizado, supervisó parte de los trabajos realizados y se benefició de la instalación de los topes de granito, ya que los mismos se instalaron en su residencia. Surge del Proyecto de Exposición Narrativa que, a preguntas del Lcdo. Otero, el apelante Richard Collazo expresó que la propiedad donde se hizo la instalación le pertenecía a su esposa. El Lcdo. Otero incluso le preguntó que si él era quien contrató con Ambienti Italiani, a lo que el testigo contestó que fueron ambos refiriéndose a él y su esposa, María del Carmen Taboas. ■

La sentencia emitida por el Tribunal de Primera Instancia descansa en la credibilidad y valor probatorio que el juzgador de los hechos dio a los testimonios y a la evidencia presentada ante su consideración. En base a las determinaciones de hechos es evidente que el tribunal *a quo* no le otorgó credibilidad a los apelantes. Un análisis del Proyecto de Exposición Narrativa de la Prueba Oral demuestra que ambas partes fueron consistentes en su versión de los hechos. Se deduce entonces que el tribunal *a quo* no dio credibilidad a los apelantes. En el presente caso, declinamos sustituir la apreciación de la prueba llevada a cabo por el Tribunal de Primera Instancia. Dicho foro tuvo ante sí y escuchó a los testigos, y por ende está en la mejor posición para tomar una determinación.

Esbozan los apelantes como cuarto error que incidió el Tribunal de Primera Instancia a imponer $500.00 por concepto de honorarios de abogado por temeridad. Aducen que en las determinaciones de hechos no se menciona temeridad. Además entienden que existía una discrepancia honesta respecto a si los apelantes tenían derecho a cobrar por un material que tuvo que ser reemplazado.

La Regla 44.1(d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1(d), autoriza al Tribunal a imponer honorarios de abogado cuando una parte o su abogado hubiera procedido con temeridad.

El concepto *"temeridad"* no está expresamente definido por la Regla 44.1(d), *supra; Blás v. Hosp. Guadalupe*, 146 D.P.R. 267 (1998). El Tribunal Supremo de Puerto Rico ha expresado que la acción que amerita la imposición de este tipo de condena es cualquiera que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o que produzca la necesidad de que otra parte incurra en gestiones evitables. Su propósito es establecer una penalidad al litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamento, obliga a la otra parte, innecesariamente, a asumir molestias, gastos, trabajos e inconvenientes de un pleito. *Domínguez Vargas v. Great American Life Assurance Co.*, res. del 12 de julio de 2002, **2002 J.T.S. 110**; *Jarra Corp. v. Axxis Corp., supra; Rivera v. Tiendas Pitusa, Inc.*, 148 D.P.R. 695 (1999); *Blás v. Hosp. Guadalupe, supra; Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713, 718-719 (1987).

La imposición de honorarios de abogado es discrecional, pero la Regla 44.1(d) de las de Procedimiento Civil es clara en el sentido de que cuando una parte ha procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado. *Raluan Corp. v. Feliciano*, 111 D.P.R. 598 (1981). Determinada la existencia de temeridad, la condena de honorarios es imperativa. *Montañez Cruz v. Metropolitan Cons. Corp.*, 87 D.P.R. 38 (1962).

No existe temeridad cuando estamos ante una discrepancia honesta en torno al derecho aplicable o cuando se trata de una cuestión novel, no resuelta en nuestra jurisprudencia. *Soc. de Gananciales v. Royal Bank of P.R.*, 145 D.P.R. 178 (1998); *Rivera v. A & C Development Corp.*, 144 D.P.R. 450, 460 (1997). El Tribunal de Primera Instancia goza de amplia discreción en este tipo de determinaciones. *Quiñones v. Manzano, supra; Miranda v. E. L.A.*, 137 D.P.R. 700 (1994); *Torres Ortiz v. E.L.A.*, 136 D.P.R. 556 (1994); *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 339, 349 (1989). Finalmente, debemos resaltar que el Tribunal apelativo sólo intervendrá en este tipo de caso cuando el Tribunal de Primera Instancia hubiera abusado de su facultad. *Ramos Báez v. Bossolo López*, 143 D.P.R. 567 (1997); *Cotto Morales v. Ríos*, 140 D.P.R. 604 (1996).

Es norma claramente establecida que la determinación sobre si una parte ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador y no será variada en apelación a menos que se demuestre que éste ha abusado de su discreción. A su vez, tampoco será variada la cuantía concedida a menos que resulte ser excesiva, exigua o constituya un abuso de discreción. *Feliciano Polanco v. Feliciano González*, 147 D.P.R. 722 (1999); *Bonilla Medina v. P.N.P.*, 140 D.P.R. 294 (1996); *Revlon v. Las Américas Trust Co.*, 135 D.P.R. 363 (1994); *Ramírez v. Club Cala de Palmas, supra.*

El Tribunal Supremo de Puerto Rico ha establecido que para fijar la cuantía de honorarios de abogado los Tribunales deben tomar en cuenta los siguientes factores: la naturaleza del litigio; las cuestiones de derecho envueltas en el mismo; la cuantía en controversia; el tiempo invertido; los esfuerzos y actividad profesional que hayan tenido que desplegarse; y la habilidad y reputación de los abogados envueltos. *Feliciano v. Feliciano, supra;* José Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, **Publicaciones J.T.S.**, 2000, T.II, a la pág. 734. Sin embargo, el grado o intensidad de la conducta temeraria o frívola es el criterio o factor determinante y crítico que tienen que tomar en consideración los tribunales al determinar la cuantía de los honorarios de abogado. *Revlon v. Las Américas Trust Co., supra.*

Por último, es norma conocida que los tribunales apelativos no habrán de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Machado Maldonado v. Barranco Colón*, 119 D.P.R. 563 (1987).

La tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Sin embargo, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto

de razonabilidad. *Pueblo v. Dávila Delgado*, 143 D.P.R. 157 (1997); *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 211 (1990); *Pueblo v. Sánchez González*, 90 D.P.R. 197, 200 (1964).

En el caso de autos, no albergamos duda de que el tribunal *a quo* no abusó de su discreción al imponer a los apelantes el pago de honorarios de abogado. La imposición de honorarios de abogado descansa en la sana discreción del Tribunal de Primera Instancia. En el presente caso no se ha demostrado que dicha imposición responda a un abuso de discreción del tribunal *a quo*. El error alegado no se cometió.

Como quinto error, alegan los apelantes que no procede el cobro de intereses porque no fue especificado en la sentencia el tipo de interés. Los intereses sobre sentencia se rigen por la Regla 44.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, la cual dispone como sigue:

*"Regla 44.3. Interés legal*

*(a) Se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que esté en vigor al momento de dictarse la sentencia, en toda sentencia que ordena el pago de dinero, a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la sentencia y hasta que ésta sea satisfecha incluyendo costas y honorarios de abogado. El tipo de interés se hará constar en la sentencia.*

*La Junta fijará y revisará periódicamente la tasa de interés por sentencia tomando en consideración el movimiento en el mercado y con el objetivo de desalentar la radicación de demandas frívolas, evitar la posposición irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias en el menor tiempo posible.*

*(b) El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo que haya fijado la Junta en virtud del inciso (a) de esta sección y que esté en vigor al momento de dictarse la sentencia desde que haya surgido la causa de acción en todo caso de cobro de dinero y desde la radicación de la demanda en caso de daños y perjuicios, y hasta la fecha en que se dicte sentencia a computarse sobre la cuantía de la sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades o funcionarios en su carácter oficial. El tipo de interés se hará constar en la sentencia."*

La antes citada regla autoriza a los tribunales a imponer intereses legales sobre la cuantía de la sentencia a aquella parte que haya procedido con temeridad en la tramitación de un caso de daños y perjuicios. Dichos intereses son computados desde la presentación de la demanda hasta la fecha en que la sentencia es emitida. No obstante, el citado precepto exime al ELA, sus municipios, agencias, instrumentalidades y funcionarios en su carácter oficial del pago de los intereses legales. *Blás v. Hosp. Guadalupe, supra; Torres Ortiz v. E.L.A., supra.*

Aunque la propia regla dispone que el tipo de interés deberá constar en la sentencia, de no ser así, no se derrota el derecho de la parte acreedora a devengar tales intereses post-sentencia. Los intereses legales sobre la sentencia forman parte integrante de la sentencia dictada y pueden ser recobrados aunque el dictamen guarde total silencio al respecto. *Quiñones v. Manzano, supra; Riley v. Rodríguez Pacheco,* 124 D.P.R. 733 (1989); *Mun. de Mayagüez v. Rivera,* 113 D.P.R. 467 (1982). Esta imposición es mandatoria contra todo litigante perdidoso cuando se ordena el pago de dinero, incluso contra el Estado y los municipios. *Morales González v. J.R.T.,* 121 D.P.R. 249 (1988); *Colondrés Vélez v. Bayrón Vélez,* 114 D.P.R. 833 (1983); *Insurance Co. of P.R. v. Tribunal Superior,* 100 D.P.R. 405 (1972). Tal imposición tiene como propósito evitar la dilación irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias a la brevedad posible. Regla 44.3(a) de las de Procedimiento Civil, *supra.*

En el caso de autos, el Tribunal de Primera Instancia claramente ordenó el pago de interés legal a partir de la Sentencia. Ante dicho mandato, el alegado error no se cometió. Se trata de un mero error de forma que ahora corregimos. El interés correspondiente es al 7% anual. ■

Es menester puntualizar que la Sentencia emitida por el Tribunal de Primera Instancia descansa en la credibilidad y valor probatorio que el juzgador de los hechos dio a los testimonios y a la evidencia presentada ante su consideración. En el presente caso, declinamos sustituir la apreciación de la prueba llevada a cabo por el Tribunal de Primera Instancia. Dicho foro tuvo ante sí y escuchó a los testigos, y por ende está en la mejor posición para tomar una determinación.

## V

Por los fundamentos antes esbozados, se confirma la Sentencia apelada.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones, Interina.

Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones

**ESCOLIOS 2006 DTA 102**

**1.** Véase página 42 de Proyecto de Exposición Narrativa; "*El licenciado Otero le preguntó al testigo si la propiedad donde se hizo la instalación le pertenece a ambos, al testigo y a su esposa, o pertenecía al testigo solamente y el testigo contestó que pertenecía sólo a su esposa. Le preguntó entonces si era o no cierto que el testigo fue el que contrató con Ambienti Italiani y dijo que ambos.*"

**2.** Cuando el tribunal sentenciador olvida señalar el tipo del interés pagadero, se trata de un error de forma subsanable *Nunc Pro Tunc*. Solo cuando impone un tipo de interés incorrecto, se tratará de un error de derecho, que puede advenir en final y firme de no ser recurrido en tiempo hábil. *S.L.G. Coriano-Correa v. K-mart Corp.* 154 D.P.R. 523, 531-532 (2001).