# 2006 DTA 113

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL VII**

MARISOL GONZALEZ ALLENDE
Apelantes

v.

EMPRESAS LAUSELL Y LAS COMPAÑIAS ASEGURADORAS X,Y,Z Y GLADYS CRUZ
Apelados

Núm. KLAN-06-00179

San Juan, Puerto Rico, a 8 de septiembre de 2006

Panel integrado por su Presidente, el Juez Arbona Lago,
el Juez Miranda De Hostos y la Juez Pabón Charneco

Pabón Charneco, Jueza Ponente

■

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos, Marisol González Allende, en adelante, la apelante, solicitando la revisión de una Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante dicho dictamen, el tribunal *a quo* declaró No Ha Lugar la Demanda instada por la apelante.

Por las razones que esbozamos a continuación, se Confirma la Sentencia apelada.

### I

Conforme surge del recurso ante nuestra consideración, el 28 de febrero de 2002, la apelante interpuso demanda sobre hostigamiento sexual contra, entre otras partes, Empresas Lausell y Gladys Cruz, en adelante, la apelada. Dicha causa de acción se instó al amparo de la Ley Núm. 17 de 22 de abril de 1988, 29 L. P.R.A. sec. 155 *et seq*. A su vez, alegó despido injustificado en contravención a lo dispuesto en la Ley Núm. 80 de 30 de mayo de 1978, según enmendada, 29 L.P.R.A. sec. 185(a).

Surge de autos que la apelante ocupaba el puesto de Operaria en Empresas Lausell, comenzando a trabajar con la compañía en septiembre de 1991. Por su parte, la apelada es Operaria en la compañía desde hace cinco (5) años, laborando en la misma área que la apelante. La apelante alegó que la apelada había realizado actos de hostigamiento sexual contra ella, comenzando dichos avances sexuales durante los primeros meses del año 2001. Planteó en lo pertinente:

"*6. ..., llegando al extremo de en dos ocasiones cogerle las manos y las nalgas, acciones que la demandante (apelante) rechazó en todo momento.*

*7. La demandante (apelante) se quejó ante su supervisor inmediato Samuel Camacho (Supervisor de Planta) sobre los hechos ocurridos en cuanto llegó a las 8:00 a.m. del día siguiente, informándole que se había sentido incómoda y molesta por la acción que realizó la demandada (apelada).*

*8. Es de conocimiento de la demandante (apelante) que a su vez el Sr. Samuel Camacho le informó sobre la situación al Sr. Mariano Deliz, Ingeniero de planta en Lausell Minillas, Zona Industrial de Bayamón.*

*9. Posteriormente, el Sr. Andy Ocasio, jefe de personal de todas las plantas, se enteró de la situación surgida con la demandante (apelante) al celebrar una reunión al otro día por la tarde en la planta, en la cual estuvieron presentes Mariano Deliz, Andy Ocasio y Marisol González (apelante). En dicha reunión salió a relucir que anteriormente hubo dos casos de empleadas que también fueron hostigadas por la misma señora Gladys Cruz (apelada).*

10. A pesar de que la demandante Marisol González (apelante) haberle informado a los supervisores y jefes inmediatos sobre dicha situación, la demandada (apelada) se quedó en el mismo (sic) área de trabajo donde estaba la demandante (apelante), la cual veía todos los días frente a frente a ésta en el trabajo de línea que hacía la demandante (apelante), situación que duró hasta mayo de 2001.

11. La conducta sexual observada a la Sra. Gladys Cruz (apelada) duró por alrededor de un mes y fue traída a la atención de Empresas Lausell mediante querella verbal presentada por la demandante (apelante) ante el Sr. Samuel Camacho en marzo de 2001.

12. Posterior a la queja, y luego de la reunión celebrada entre Dellliz (sic), Ocasio y la demandante (apelante), el Sr. Andrés Ocasio presentó un reporte a las Empresas Lausell.

13. La conducta de hostigamiento sexual por parte de la demandada (apelada) creó un ambiente en el trabajo íntimamente hostil y ofensivo, todo esto con la anuencia, aprobación y tolerancia expresa de la agencia a la cual se había traído a su antención (sic) esta querella.

14. Debido a esta situación, la demandante (apelante) tuvo que reportarse enferma en mayo de 2001 y comenzó a presentar síntomas de depresión, la cual es tratada por una siquiatra, a la que ésta visita frecuentemente.

15. Posteriormente, la demandante (apelante) visitó su área de trabajo para evaluar lo relacionado a sus ausencias y la Sra. Gladys Cruz (apelada) se encontraba trabajando en la misma área de trabajo como operaria de línea, en el mismo lugar donde trabajaba la demandante (apelante).

16. La demandante (apelante) a consecuencia de haberse querellado con su patrono para el mes de marzo de 2001 se sentía atemorizada y ansiosa, lo cual alteró su salud emocional y física al tenr (sic) que trabajar en el (sic) mismo (sic) área de trabajo de la hostigadora a quien incluso temía encontrarse en las áreas comunes como el baño de damas.

17. Posteriormente, la demandante (apelante) le fue liquidada sus vacaciones, cobraron un préstamo y el restante del dinero no le fue entregado a la demandante (apelante).

18. La demandante (apelante) fue despedida injustificadamente, ya que la Empresa Lausell se sintió molesta por ésta (apelante) haber radicado una querella de hostigamiento contra la demandada. Por tanto, le coresponde (sic) que se le pague la mesada de vacaciones, una semana de sueldo y todo lo que conlleva un despido injustificado.

19. El hostigamiento de que fue víctima Marisol González (apelante) se debió en forma exclusiva a las actuaciones culposas, intencionales, discriminatorias, ilegales e inconstitucionales de los co demandados. Son ambos, por lo tanto, civilmente responsables en forma solidaria de la totalidad de los daños y perjuicios que se reclaman en la presente acción.

20. La demandante (apelante) durante el tiempo que laboró junto a la demandada (apelada) percibió las miradas insistentes de ésta (apelada) a sus glúteos y área genital femenina, expresiones no verbales en su rostor (sic) de satisfacción sexual, roces y comentarios.

21. La demandante (apelante) le hizo saber a la demandada Sra. Cruz (apelada) que no aceptaba que ésta (apelada) pusiera sus manos sobre las de ella y que la conducta hostigante sexual no le agradaba, en el mismo momento en que ocurrieron estos actos.

*22....".*

Véase, Anejo 2 del Apéndice.

A la luz de los actos arriba reseñados, solicitó daños y perjuicios ascendentes a $500,000.00, así como $2,000.00 por gastos de médicos, *inter alia.*

Trabada la controversia entre las partes, y luego de los trámites procesales de rigor, la vista en su fondo se celebró. Aquilatada la prueba testifical y documental, el Tribunal de Primera Instancia emitió la Sentencia apelada el 10 de enero de 2006, notificada el 18 de enero de 2006. Mediante la misma, dicho foro desestimó la Demanda instada. Inconforme con el dictamen emitido, la apelante acude antes nos. Contando con el beneficio de la Transcripción de la Prueba y el alegato de Empresas Lausell, procedemos a resolver.

## II

En su escrito, la apelante plantea que incidió el Tribunal de Primera Instancia al concluir que no estableció ninguno de los elementos de la causa de acción por concepto de hostigamiento sexual en la modalidad de ambiente hostil; en la apreciación de la prueba; y al concluir que había abandonado su empleo, ya que las condiciones de trabajo en Lausell no la obligaban a renunciar, y no se probó despido constructivo e injustificado.

## III

La Sec. 1 del Art. II de la Carta de Derechos de la Constitución de Puerto Rico dispone expresamente que no podrá establecerse discrimen alguno, entre otras circunstancias, por razón de sexo. En el ámbito obrero-patronal, el discrimen por razón de sexo está prohibido por varias leyes. Véase, *Santiago v. Oriental Bank & Trust,* 157 D. P.R. ___ (2002), **2002 J.T.S. 89**.

El hostigamiento sexual en el empleo constituye una modalidad de discrimen por razón de sexo proscrita, *inter alia,* por la Constitución de Puerto Rico y la Ley Núm. 17, *supra.*

La citada Ley Núm. 17 prohíbe el hostigamiento sexual entre empleados en el lugar de trabajo si el patrono o sus agentes o sus supervisores sabían o debían estar enterados de dicha conducta, a menos que el patrono probara que tomó una acción inmediata y apropiada para corregir la situación. 29 L.P.R.A. sec. 155e. Corresponde a cada patrono, a la luz de sus circunstancias particulares, tomar las medidas cautelares que sean necesarias para efectivamente evitar el hostigamiento sexual en sus talleres de trabajo. *Sánchez v. A.E.E.,* 142 D.P.R. 880 (1997); *Delgado Zayas v. Hosp. Int. Med. Avanzada, supra.*

En el Art. 3 de la referida Ley Núm. 17 está definido el concepto de hostigamiento sexual como:

*"El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier conducta verbal o física de naturaleza sexual, cuando se da una o más de las siguientes circunstancias:*

*(a) Cuando al someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.*

*(b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.*

*(c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo."*

29 L.P.R.A. sec. 157.

Como podemos colegir del estatuto reseñado, el hostigamiento sexual puede ser de dos modalidades: el *"quid pro quo"* (algo a cambio de algo) o el hostigamiento sexual en ambiente hostil según ha establecido el Tribunal Supremo de Puerto Rico. Los incisos (a) y (b) del Art. 3 describen a la primera modalidad, mientras el inciso (c) a la segunda modalidad. *Delgado Zayas v. Hosp. Int. Med. Avanzada, supra.* En la modalidad *"quid pro quo"*, los patronos acondicionan las oportunidades y los beneficios del empleado a cambio de favores sexuales. *Id.* Esto es, el sometimiento o rechazo de los avances o requerimientos sexuales se toma como fundamento para afectar beneficios tangibles en el empleo. Conforme a dicha modalidad, se requiere que el demandante pruebe la solicitud de favores sexuales o el sufrimiento de avances de igual tipo, y que el sometimiento o rechazo a dichos avances o a la referida solicitud haya sido la causa de una decisión adversa en cuanto a una condición o al término de su empleo. *Rodríguez Meléndez v. Sup. Amigo, supra,* a las págs. 131-132.

De igual forma, se reconoce la existencia de una reclamación por hostigamiento sexual equivalente (*"quid pro quo"*) cuando el demandante logra establecer que las deficiencias en el desempeño de su labor -por lo cual es despedido u obligado a renunciar-, son consecuencia directa del ambiente hostil en el que se vio obligado a trabajar. *Id.*

La otra modalidad de hostigamiento sexual, la de ambiente hostil, queda configurada cuando la conducta hacia una persona por razón de su sexo tiene el efecto de interferir irrazonablemente con el desempeño de su trabajo o de crear en el mismo un ambiente de trabajo intimidante, hostil u ofensivo. *Rodríguez Meléndez v. Sup. Amigo, supra.* Se configura el ambiente hostil cuando el empleado demuestra que existe en su área de trabajo un ambiente abusivo como consecuencia de los actos de índole sexual. Ambiente se refiere a las condiciones o circunstancias de un lugar, favorables o no, para las personas que en él están. *Sánchez, et al v. A.E.E., supra.* El ambiente es algo continuo, creado por las condiciones o circunstancias de un lugar. Como consecuencia, el ambiente hostil perdura mientras estén presentes las condiciones que los causan. *Id.* (Opinión Concurrente del Juez Asociado Negrón García).

La modalidad de hostigamiento sexual en un ambiente hostil puede ocurrir independientemente de que no exista menoscabo económico de la alegada víctima o de que la conducta no sea explícitamente sexual. *Sánchez, et al v. A.E.E., supra.* Basta que la conducta que se imputa como constitutiva de hostigamiento, se origine por razón del sexo de la persona y que la misma cree unas circunstancias en el empleo que alteren significativamente las condiciones de trabajo. *In re: Robles Sanabria,* 151 D.P.R. 483 (2000).

El hostigamiento sexual puede expresarse en diversas formas: 1) manifestaciones simples como piropos, guiñadas e insinuaciones sexuales indeseadas; 2) expresiones de agresión sexual más directas y más violentas como frases de cariño no invitadas, pellizcos, roces corporales no solicitados, invitaciones insistentes a salidas que no se desean, besos, abrazos y apretones forzados; 3) casos extremos de violencia física y psíquica, que incluye la violación sexual. *Sánchez v. A.E.E., supra,* a la pág. 849.

El Art. 4 de la Ley Núm. 17, *supra,* dispone cómo se determinará qué conducta es constitutiva de hostigamiento sexual. Sobre el particular nos señala el precepto, en lo pertinente:

*"Para determinar si la alegada conducta constituye hostigamiento sexual en el empleo se considerará la totalidad de las circunstancias en que ocurrieron los hechos. La determinación de la legalidad de una acción se hará basada en los hechos de cada caso en particular."*

29 L.P.R.A. sec. 155c

En estos casos, los tribunales tratan de delimitar unos parámetros que incluyen prueba de la ansiedad y

debilidad, además de la evidencia del daño psicológico de la víctima. Hoy día se toma seriamente en consideración las experiencias de tensión que sufren las víctimas ante acercamientos sexuales que no son bienvenidos. En orden a establecer un caso *prima facie* de hostigamiento sexual por ambiente abusivo, el demandante debe probar que ha ocurrido más de un incidente de conducta sexual ofensiva. La conducta ofensiva es la condición discriminatoria en el empleo y requiere que esa conducta haya ocurrido con alguna frecuencia. Ruth E. Ortega-Vélez, *Hostigamiento Sexual en el Empleo*, Ed. Scisco, 1998, a las págs. 21-22. *Sánchez v. A.E.E., supra*. Es preciso demostrar que la conducta crea una atmósfera hostil, intimidante u ofensiva, o que el ambiente laboral creado por las actuaciones hacia su persona interfieren de forma irrazonable con el sano desempeño de su trabajo. *Delgado Zayas v. Hosp. Int. Med. Avanzada, supra*, a las págs. 653-654.

A fin de poder establecer que la conducta crea un ambiente que afecte a la víctima, en primer lugar hay que establecer que los alegados acercamientos sexuales ocurrieron, situarse desde la perspectiva de la víctima y se debe considerar la forma en que el hombre y la mujer difieren al reaccionar ante las mismas circunstancias. Históricamente, las mujeres han sido víctimas más frecuentes de violación y de ataques sexuales. Por ello, la mujer que ha sido víctima de hostigamiento sexual, por leve que sea éste, se preocupa que tal conducta sea el preludio de un ataque sexual violento contra su persona. Ortega, *Hostigamiento Sexual en el Empleo, supra*, a las págs. 78-79. Por ello, en los casos de hostigamiento sexual, el tribunal debe decidir a base de la "*víctima razonable*" y de todas las circunstancias relevantes según se han desarrollado en el lugar de trabajo.

**IV**

Dentro del marco jurídico antes enunciado, procedamos a resolver la controversia de autos.

En el primer error señalado, la apelante plantea que incidió el Tribunal de Primera Instancia al determinar que no se establecieron los elementos de la causa de acción por concepto de hostigamiento sexual en la modalidad de ambiente hostil. Arguye que manifestó y testificó que había sido víctima de acoso sexual por parte de la apelada, trayendo prueba testifical que reflejaba que el patrono conocía de la conducta de la apelada hacía las féminas. Asimismo, del ambiente hostil al que fue sometida desde el día de su queja, hasta el 1 de agosto de 2001, fecha en que se acogió a una licencia no ocupacional.

A su vez, alega que la apelada, con anterioridad a los hechos que dieron génesis a la causa de autos, había tenido varios sucesos de acosos sexuales con otras féminas, quienes testificaron en el juicio, a saber, Brunilda Rivera Rodríguez ■ y Azalia Rolón. ■ Lo anterior reflejaba que Empresas Lausell conocía de la conducta repetitiva de la apelada, sin tomar acción afirmativa al respecto. Plantea que dicha empresa tenía la alternativa de cambiar a la apelada a otra planta; sin embargo, no lo hizo. Meramente colocó a la apelada de frente a la apelante a unos veinte (20) o treinta (30) pies de distancia, cuya separación eran unos estantes que conforme a la producción se llenaban, pero que mientras estaban vacíos la apelada miraba a la apelante. A su vez, para poder ir al baño, la apelante tenía que pasar por donde estaba la apelada.

Comencemos señalando que surge de las determinaciones de hechos efectuadas por el Tribunal de Primera Instancia, las cuales transcribimos *in extenso*, lo siguiente:

"*1. La señora Marisol González Allende (en lo sucesivo González) trabajó desde el 1991 hasta el 2001 como operaria de Empresas Lausell.*

*2. Las Empresas Lausell se dedican a la manufactura, entre otras, de puertas y ventanas. Para el 2001, Lausell tenía en vigor una política para prohibir el hostigamiento sexual en el empleo. Dicha política se divulgaba a los empleados y se exhibía en un lugar público dentro de la planta.*

*3. El 27 de marzo de 2001, González (apelante) se querelló ante su supervisor, Sr. Samuel Camacho, sobre un incidente que alegó había ocurrido el día antes. González (apelante) le relató que mientras estaba en la línea*

*para registrar su asistencia, utilizando un registro electrónico sintió, que la señora Gladys Cruz (apelada) le tocó los glúteos."*

*Respecto a este incidente, ninguno de los testigos presentados por la demandante (apelante) pudo corroborar el mismo. La demandante (apelante) testificó que ella asumió que fue Cruz (apelada) quien le tocó, ya que era la más cercana a ella en la fila.*

*Este fue el primer y único incidente que González (apelante) le informó a su supervisor de las Empresas Lausell respecto a acercamientos de naturaleza sexual por la señora Gladys Cruz (apelada).*

*4. Las Empresas Lausell tuvo un receso laboral del 28 de marzo de 2001 hasta el 2 de abril de 2001. El 2 de abril de 2001, Andrés Ocasio, ██ director de recursos humanos de Lausell para esa fecha y Mariano Deliz director de la planta, se reunieron con la señora González (apelante) y discutieron los asuntos relatados por ésta sobre el alegado incidente del día 26 de marzo. Como resultado de esa reunión se tomó la decisión de trasladar a Gladys Cruz (apelada) a otra área de trabajo dentro de la planta.*

*5. El área de trabajo donde fue ubicada Gladys Cruz (apelada) fue el de máquina a fondo y punte de cabezales.*

*Cruz (apelada) trabaja frente a dos máquinas, una de aproximadamente 5 pies de altura y otra de 7 pies. Su trabajo consistía en movimientos continuos de ponches de piezas de metal que debía ser retiradas de un carro, ponchadas y almacenadas en otro carro. Dicha área estaba como a 30 pies del área de trabajo de González (apelante).*

*6. González (apelante) estaba asignada a la línea de producción en la que trabajan diez empleados, con funciones distintas en el proceso de ensamblaje de ventanas. La línea opera sobre una correa que está en movimiento constante. Mientras una persona pone a las ventanas, otra les pone pega, otra pone dos baretas por cada cristal, después otra monta una pieza denominada picúa, luego se le pone el cartón a la ventana ya completa y finalmente se baja de la correa y monta en un carro.*

*Hasta que la persona a cargo de poner los cristales no termina esa función, la persona a cargo de poner las baretas no pude (sic) realizar su trabajo, y así sucesivamente.*

*González (apelante) estaba a cargo de poner las baretas a las ventanas. La línea de ensamblaje se mueve con rapidez teniendo los empleados que ensamblar, para ese momento, una ventana por minuto.*

*Por la naturaleza del trabajo que realizaban y la rapidez con la que se movía la línea de producción, cada empleado tenía que estar concentrado en sus funciones.*

*La maquinaria de la planta genera mucho ruido. De hecho, produce un ruido constante que impide que un empleado pueda hablar con otro a menos que sea a alta voz. A los empleados se les requiere que utilicen unos audífonos para protegerse del ruido.*

*La naturaleza del trabajo que hacía González (apelante), como el que hacía Cruz (apelada), requería que ambas estuvieran concentradas y pendientes de lo que estaban haciendo. Como se expresó, el trabajo de un empleado dentro de la línea de producción requiere un grado alto de concentración por ser actos sucesivos.*

*7. Corroboramos lo anterior en una inspección ocular que realizamos a solicitud de la parte demandante (apelante), de la planta donde ésta se desempeñaba. Las partes estuvieron de acuerdo en que las circunstancias en la planta estaban iguales a la fecha sobre los alegados hechos, excepto unas cajas que estaban ubicadas en un*

*lugar que no cambiaron las circunstancias.*

**8. La demandante (apelante) reconoció que luego de haber cambiado a la señora Cruz (apelada) de área de trabajo no tuvo ningún tipo de contacto con ésta (apelada).**

**Testificó, sin embargo, que la señora Cruz (apelada) la miraba constantemente. Este testimonio no nos mereció credibilidad.** *Corroboramos en la inspección ocular que por la localización y la naturaleza del trabajo que ambas desempeñaban, no es posible o es muy poco probable, desatender lo que se está haciendo para fijar la mirada en otra cosa que no sea el trabajo que se está realizando.*

**Respecto a lo anterior, la señora González (apelante) no informó a ninguno de sus supervisores que la señora Cruz (apelada) la estuviera mirando o haciendo algún tipo de acercamiento. Ahora bien, testificó que en una ocasión recurrió a un guardia privado que estaba en la planta para que estuviera pendiente mientras ella se dirigía hacía el baño. Sobre ello informó que no le relató este incidente a ninguno de sus supervisores.**

*9. En julio de 2001, González (apelante) se acogió a una licencia por incapacidad no ocupacional (SINOT) para atenderse una condición de anemia que padecía. Específicamente indicó en el formulario que sometió a Lausell que su condición y la razón por la cual solicitaba la licencia bajo Sinot no estaba relacionada con su empleo.*

*La señora González, (apelante) estuvo fuera de su empleo en licencia por Sinot por un período mayor de un año. Durante dicho período no solicitó ser reinstalada a su empleo.*

*En septiembre de 2002, Lausell le notificó que había transcurrido más de un año desde que se había acogido a la licencia bajo Sinot y que no solicitó reinstalación en su empleo, término que venció el 7 de agosto de 2002. Asimismo, se le informó que no había provisto certificado médico o de otra índole desde el mes de mayo de 2002 que justificara su ausencia, por lo cual estaban tomando su actuación como una renuncia y procedieron a darle de baja como empleada de la Compañía.*

*10. La señora González (apelante) testificó que no solicitó reinstalación en su empleo porque visitó la planta en una ocasión y vio a Cruz (apelada).* " (Énfasis suplido)

Véase, Anejo 1 del Apéndice.

Conforme reseñado, la determinación de qué constituye un ambiente hostil o abusivo es un asunto que requiere sumo cuidado. Debido a la naturaleza misma de las relaciones humanas, se trata de situaciones donde es necesaria una evaluación minuciosa de la totalidad de las circunstancias que rodean el caso. Ante esta realidad, la jurisprudencia se ha encargado de elaborar un estándar que toma en cuenta la hostilidad del ambiente de trabajo desde la vertiente subjetiva de la víctima y desde la vertiente objetiva de la persona razonable. *Delgado Zayas v. Hosp. Int. Med. Avanzada, supra,* citando con aprobación a *Harris v. Forklift,* 510 U.S. ___, 126 L. Ed. 2d 295 (1993). A tales efectos, el Art. 4 de la Ley Núm. 17, *supra,* recoge la norma antes expuesta al expresar que: *"(p)ara determinar si la alegada conducta constituye hostigamiento sexual en el empleo se considerará la totalidad de las circunstancias en que ocurrieron los hechos. La determinación de la legalidad de una acción se hará basada en los hechos de cada caso en particular".* Sobre este extremo, el Tribunal Supremo Federal, en el caso de *Oncale v. Sundowner Offshore Services, Inc.,* 118 S. Ct. 998 (1998), señaló:

*"[T]he objective severity of harassment should be judged from the perspective of a reasonable person in plaintiff's position, considering "all the circumstances". In same-sex (as in all) harrasment cases, that inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target."*

Posteriormente, en el caso de *Faragher v. City of Boca Raton*, 118 S. Ct. 2275 (1998), el Tribunal Supremo de Estados Unidos, citando con aprobación a *Harris v. Forklift, supra*, apuntó:

*"So, in Harris, we explained that in order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."*

Más adelante en el mismo caso, el referido foro judicial expresó:

*"Most recently, we explained that Title VII does not prohibit "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex". Oncale, 523 U.S. ___, 118 S.Ct. at 1003. A recurring point in these opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment".*

Por su parte, el Tribunal Supremo de Puerto Rico en *Rodríguez Meléndez v. Sup. Amigo, supra*, expresó lo siguiente:

*"[L]a pregunta de umbral en toda reclamación de acuerdo con esta modalidad es si la alegada conducta constitutiva de hostigamiento fue lo suficientemente severa y ofensiva como para alterar las condiciones del empleo y crear un ambiente de trabajo abusivo. Este examen debe realizarse atendiendo a la totalidad de las circunstancias y, muy en particular, a factores tales como la naturaleza de la conducta alegada, su frecuencia e intensidad, contexto en el cual ocurre, período de tiempo y su extensión, y la conducta y circunstancias personales del demandante."* [Citas omitidas]

A la luz de la jurisprudencia interpretativa, el dictamen del tribunal *a quo* se sostiene. En particular, apuntó la magistrada de instancia que los hechos no eran de índole sexual:

*"...*

*De los hechos probados por la demandante (apelante) como parte de la prueba desfilada, ninguno de ellos es de índole sexual. Tampoco probó que los hechos estuvieran motivados por un ánimo anti-femenino.*

*González (apelante) testificó haber sido objeto de un sólo incidente de hostigamiento sexual consistente en que le tocaron los glúteos. La demandante (apelante) admitió, sin embargo, que nunca vio a Cruz (apelada) tocándola y asumió que había sido ella porque era la persona que la seguía en la fila del ponchador. Dicho acto, por sí solo, y de haber ocurrido, a pesar de que ninguno de los testigos presentados por González (apelante) lo pudo corroborar, no es suficiente para establecer que González (apelante) haya sido objeto de un ambiente suficientemente severo para constituir hostigamiento sexual. Los otros alegados incidentes sobre los que González (apelante) testificó fueron vagos o imprecisos en términos de contenido o tiempo y tampoco fueron corroborados por ninguno de sus testigos. Ahora bien, sí testificó que cuando salían a comer en grupo incluyendo a la demandada Gladys Cruz (apelada) hacían chistes de contenido sexual, pero ello no le ofendió porque no estaban dirigidos a su persona. Tampoco sobre estos sucesos notificó o informó a sus supervisores.*

*...".*

Véase, Anejo 1 del Apéndice a la pág. 10.

Por otro lado, y a manera de argumentación, de haber sido actos de índole sexual, somos de opinión que la apelante no presentó prueba suficiente de haber sido sometida a una conducta de tipo sexual que tuviera el efecto

o propósito de intervenir de manera irrazonable con las condiciones del empleo y el desempeño de sus labores, ni de crear un ambiente de trabajo intimidante, hostil u ofensivo. La prueba oral desfilada ante el tribunal sentenciador denota que la conducta a la que la apelante adjudica la calidad de hostigamiento sexual en su modalidad de ambiente hostil no tiene tal alcance. Empresas Lausell cumplió con los requisitos y siguió el procedimiento interno al presentarse la queja. Investigó inmediatamente las alegaciones, separó a la apelada e instó a la apelante a que reportara algún incidente, lo cual no hizo. De hecho, la apelante admitió que posterior a la remoción de la apelada no se suscitaron incidentes adicionales. Nada hay en el expediente que denote que las circunstancias de trabajo creadas fueran de tal naturaleza que una persona razonable, en idéntica situación, no hubiera tenido otra opción que renunciar.

Por otro lado, y con respecto al argumento de que Empresas Lausell podía trasladar a la apelada a otra planta, se desprende del testimonio de la Directora de Recursos Humanos de la Empresa que lo mismo era imposible. Atestó que: "*cada planta se dedica a fabricar productos diferentes. Por ejemplo, el transferir un empleado de una planta a otra conllevaría un adiestramiento nuevo para la otra planta para la se traslade exactamente.*" (Véase, pág. 32 de la Transcripción de la Prueba.)

La apelante nos plantea en su segundo error que incidió el Tribunal de Primera Instancia en su apreciación de la prueba.

Es norma claramente establecida por el Tribunal Supremo de Puerto Rico que en ausencia de error manifiesto, pasión, prejuicio o parcialidad, no se intervendrá a nivel apelativo con las determinaciones de hechos y adjudicación de credibilidad hecha en instancia por el juzgador de los hechos. *Argüello v. Argüello*, 155 D.P.R. 62 (2001); *Trinidad v. Chade*, 153 D.P.R. 280 (2001); *Quiñones v. Manzano*, 141 D.P.R. 139 (1996); *Orta v. Padilla*, 137 D.P.R. 927 (1995); *Vélez v. Srio. de Justicia*, 115 D.P.R. 529 (1984); *Ortiz v. Cruz Pabón*, 103 D.P. R. 939 (1975); *Rodríguez v. Concreto Mixto, Inc.*, 98 D.P.R. 579 (1970).

Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. *Argüello v. Argüello, supra.* La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. *Id.; Pueblo v. Bonilla Romero*, 120 D.P.R. 92 (1987). El juez sentenciador, ante quien deponen los testigos, es quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. *Argüello v. Argüello, supra.*

"*[L]a declaración de un testigo no contradicho sobre un hecho determinado, debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil o que por su conducta en la silla testifical se haga indigno de crédito*". *Miranda Soto v. Mena Eró*, 109 D.P.R. 473 (1980); *Alicea v. Sucn. F. Gil Rivera*, 87 D.P.R. 789 (1963); *Villaronga, Com. v. Tribl. de Distrito*, 74 D.P.R. 331 (1953).

Aunque, de ordinario, el foro apelativo no interviene con la apreciación de la prueba que hacen los tribunales de instancia, sí lo hace cuando un balance racional, justiciero y jurídico de la totalidad de la prueba y de los documentos que obran en autos lleva a conclusiones distintas a las del tribunal de instancia. *Negrón Rivera y Bonilla, Ex Parte*, 120 D.P.R. 61 (1987).

Un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 181 (1985); *Pérez v. Hosp. La Concepción*, 115 D.P.R. 721, 728 (1984). No obstante, está claro que el arbitrio del juzgador de hechos es respetable, mas no absoluto. Por eso, una apreciación errónea de la prueba no tiene credenciales de inmunidad

frente a la función revisora de un tribunal apelativo. Véase, *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8 (1987); *Vélez v. Srio. de Justicia, supra*.

La apelante nos solicita descartemos la apreciación de la prueba realizada por dicho foro y la sustituyamos por la nuestra. Observamos que el foro apelado no solamente escuchó los testimonios vertidos, sino que realizó una inspección ocular del lugar de trabajo de las partes.

Nos plantea que Empresas Lausell carecía de una política anti-hostigamiento fuerte. Descansa su aseveración en que la empresa no pidió por escrito la querella, no entrevistó testigos, desapareció el memo de su supervisor, entre otros.

Sobre el particular, diferimos de la posición de la apelante en que Empresas Lausell no tomó las medidas correctivas. Basta apuntar que el récord demuestra lo contrario. Conforme esbozado, Empresas Lausell tenía vigente una política contra el hostigamiento, investigó la querella de inmediato y tomó las medidas adecuadas.

En esta etapa debemos aclarar que somos de opinión que el foro *a quo* no concedió credibilidad al testimonio de la apelante. No podemos hacer abstracción de que dicho foro efectuó una vista ocular del área de trabajo donde apuntó que debido a la rapidez con que se movía la línea de producción cada empleado tenía que estar concentrado en su trabajo, por lo que era poco probable que la apelada pudiera desatender sus funciones para mirar constantemente a la apelante.

Por último, nos señala que erró el tribunal *a quo* al determinar que no probó despido constructivo e injustificado. Arguye que cuando regresó a trabajar, transcurrido un (1) año desde que estaba en licencia, vio a la apelada en el área de trabajo y determinó que bajo esas condiciones era imposible volver a trabajar. Argumenta que lo anterior configuró un despido constructivo. Diferimos de tal aseveración.

La Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185(a) *et seq.*, establece una causa de acción para aquellos empleados a tiempo indeterminado que son despedidos de sus empleos sin justa causa.

El despido constructivo, recogido en el Art. 5 del estatuto, constituye una modalidad del despido sin justa causa; es decir, es un despido injustificado. Dicho precepto establece en lo pertinente:

*"...La renuncia del empleo motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar, tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra."*

29 L.P.R.A. sec.185e.

La jurisprudencia y las Guías Interpretativas de la Ley de Despido Injustificado de Puerto Rico, indican que un despido constructivo sólo procede cuando la persona demuestra que su patrono incurrió en actos voluntarios e injustificados encaminados a obligar al empleado a dejar su empleo y que la única alternativa razonable era la de abandonar su cargo o empleo. *Arthur Young & Co. v. Virgilio Vega*, 136 D.P.R. 157 (1994); *Vélez de Reilova v. R. Palmer Bros., Inc.*, 94 D.P.R. 175 (1967).

A fin de que se configure el despido constructivo, se requieren los siguientes elementos básicos: (1) las acciones del patrono deben exhibir un nivel de seriedad considerables, no ser simples malentendidos o situaciones antipáticas que no tienen el efecto de crearle al empleado un ambiente de trabajo que resulte intimidante, hostil y ofensivo; y (2) el empleado no puede tener disponible otra alternativa que no sea romper el vínculo obrero-patronal para resolver la situación que enfrenta en su trabajo. Si existe otra opción que pueda resultar razonable

para resolver la situación que enfrenta en su trabajo, entonces éste tiene una obligación de recurrir a dicha opción para intentar resolver el asunto. De lo contrario, no podrá invocar que fue víctima de un despido constructivo.

Es preciso que dichas actuaciones sean arbitrarias, irrazonables y caprichosas, que generen una atmósfera hostil para el obrero, que impidan su sana estadía en el trabajo y que sean originadas por un motivo ajeno al legítimo interés de salvaguardar el bienestar de la empresa. Gestiones administrativas realizadas con el único propósito de salvaguardar el bienestar de la empresa, no dan lugar a un despido constructivo si la intención del patrono al realizar las mismas no era la de lesionar la condición en el empleo del trabajador. *Soc. de Gananciales v. Royal Bank de P.R.*, 145 D.P.R. 178 (1998). Es por ello que no todos los traslados, reducciones de salario o cambios de condiciones de trabajo dan lugar a un despido constructivo. *Id.*

En el caso de marras, y a la luz de la jurisprudencia antes citada, no están presentes los requisitos prescritos en el Art. 5 de la Ley Núm. 80, *supra*, y que son necesarios para que se configurara el despido constructivo.

Hemos evaluado las determinaciones de hechos realizadas por el Tribunal de Primera Instancia y las mismas están sostenidas por la prueba desfilada. No podemos dejar a un lado determinaciones de hechos descansando en inferencias. En el caso de autos, no incidió el Tribunal de Primera Instancia en su determinación.

## V

Por los fundamentos arriba esbozados, se confirma la Sentencia apelada.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria Interina del Tribunal de Apelaciones.

Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones

### ESCOLIOS 2006 DTA 113

**1.** Compañía autorizada a hacer negocios en Puerto Rico.

**2.** Empresas Lausell y la apelada instaron alegación responsiva, luego de habérseles levantado anotación de rebeldía. En la contestación a la demanda se admitió que la apelante había instado una queja de alegado hostigamiento sexual, la cual había sido tramitada.

**3.** Plantea que surge de la deposición de la testigo que, para el año 1999, la apelada la tocó por las nalgas. Dicho incidente fue notificado al Supervisor.

**4.** Se desprende de la deposición de la testigo que la apelada la hacía miradas a sus partes íntimas. A su vez relató un alegado incidente en donde intervinieron varios Supervisores, siendo suspendida la apelada.

**5.** Nota al calce de la Sentencia: *"La parte demandante (apelante) anunció en el informe de conferencia con antelación al juicio, que presentaría como testigo a Andrés Ocasio, Director de Recursos Humanos de Lausell para los hechos alegados en la demanda. No lo hizo, por lo que este Tribunal le aplicó la presunción adversa que establece la Regla 16 de las de Evidencia."*